In The

# United States Court of Appeals

## For The Federal Circuit

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

NOV 0.3 2009

JAN HORBALY
CLERK

# IRIS CORPORATION,

*Plaintiff – Appellant,*

v.

# JAPAN AIRLINES INTERNATIONAL COMPANY, LTD.,

*Defendant – Appellee,*

and

# JAPAN AIRLINES CORPORATION,

*Defendant.*

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK
### IN CASE NO. 06-CV-6336, JUDGE CAROL BAGLEY AMON.

---

## BRIEF OF APPELLANT

---

Stephen N. Weiss
Gregory J. Fleesler
MOSES & SINGER LLP
405 Lexington Avenue
New York, New York  10174
(212) 554-7800

*Counsel for Appellant*                    *Dated: December 23, 2009*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

IRIS CORPORATION <u>v.</u> JAPAN AIRLINES

No. <u>2010-1051</u>

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
<u>APPELLANT</u> certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

IRIS CORPORATION

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

NA

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

NONE

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Moses & Singer LLP, by Stephen N. Weiss, Gregory J. Fleesler, Michael Pospis and Amanda Schaffer

<u>December 23, 2009</u>
Date

Signature of counsel

**Stephen N. Weiss**
Printed name of counsel

Please Note: All questions must be answered
cc: <u>Charles F. Schill, Esq.</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF RELATED CASES ........................................................ vi

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE .................................................................... 2

STATEMENT OF FACTS ........................................................................... 4

SUMMARY OF ARGUMENT .................................................................... 5

STANDARD OF REVIEW .......................................................................... 6

ARGUMENT ................................................................................................ 7

I.     There Is No Conflict Between The Enhanced Border Security Act, 8 U.S.C. § 1221 *et seq.*, And The Patent Laws Of The United States, Particularly 35 U.S.C. § 271(g) ................................................................................. 7

       A.    The Fact That JAL Is Required To Use Passports In The Course Of Its Voluntary Commercial Business Activities Does Not Exempt It From Patent Infringement Liability ........................................... 9

             1.    There Is No Conflict Between 35 U.S.C. § 271(g) And The Enhanced Border Security Act ................................................................... 10

             2.    *SmithKline Beecham*, A Copyright Case, Has No Relevance To The Patent Case At Bar ......................................................................... 15

CONCLUSION ............................................................................... 18

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Florida Prepaid Educ. Expense Bd. v. College Sav. Bank,*
527 U.S. 627 (1999)..........................................................................7, 8

*Glaxo, Inc. v. Novopharm, Ltd.,*
110 F.3d 1562 (Fed. Cir. 1997) .........................................................13

*Jentoft v. U.S.,*
450 F.3d 1342 (Fed. Cir. 2006) ........................................................6, 7

*Laker Airways, Inc. v. British Airways, PLC,*
182 F.3d 843 (11th Cir. 1999) ..............................................................6

*Morton v. Mancari,*
417 U.S. 535 (1974)............................................................................10

*Rite-Hite Corp. v. Kelly Co.,*
56 F.3d 1538 (Fed. Cir. 1995) ............................................................17

*Roche Prods., Inc. v. Bolar Pharm. Co.,*
733 F.2d 858 (Fed. Cir. 1984) ............................................................13

*SmithKline Beecham Consumer Healthcare, L.P. v.*
*Watson Pharms., Inc.,*
211 F.3d 21 (2d Cir. 2000).......................................................15, 16, 17

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
464 U.S. 417 (1984)............................................................................13

*State Contracting & Eng'g Corp. v. Condotte Am. Inc.,*
346 F.3d 1057 (Fed. Cir. 2003) ........................................................9, 12

*Union Oil Co. Of Cal. v. Atl. Richfield Co.,*
34 F. Supp. 2d 1208 (C.D. Cal. 1998) ................................................11

*Union Oil Co. Of Cal. v. Atl. Richfield Co.*,
  No. 95-2379, 1998 U.S. Dist. LEXIS 22847
  (C.D. Cal., Mar. 6, 1998) ................................................. 11

**CONSTITUTIONAL PROVISION**

U.S. CONST. amend. V ................................................................. 14

**STATUTES**

8 U.S.C. § 1211 ............................................................................ 17

8 U.S.C. § 1221 .................................................................... 1, 5, 7

28 U.S.C. § 1295(a)(1) ................................................................ 1

28 U.S.C. § 1331 ......................................................................... 1

28 U.S.C. § 1338(a) .................................................................... 1

28 U.S.C. § 1498(a) ................................................................. 3, 4

35 U.S.C. § 261 ....................................................................... 6, 9

35 U.S.C. § 271(e)(1) ............................................................. 8, 13

35 U.S.C. § 271(g) .............................................................. *passim*

35 U.S.C. § 272 ..................................................................... 8, 13

35 U.S.C. § 284 ...................................................................... 6, 8

42 U.S.C. § 2183(c)-(e) .......................................................... 8, 14

42 U.S.C. § 7608 ................................................................... 8, 14

# REGULATIONS

14 C.F.R. §§ 1.1 – 135.443 ................................................................. 7

14 C.F.R. § 135.149 ....................................................................... 10

14 C.F.R. § 135.151 ....................................................................... 10

14 C.F.R. § 135.154 ....................................................................... 10

14 C.F.R. § 135.155 ......................................................................9-10

14 C.F.R. § 135.157 ....................................................................... 10

14 C.F.R. § 135.171 ....................................................................... 10

49 C.F.R. § 571.208 ....................................................................... 12

49 C.F.R. § 571.209 ....................................................................... 12

# RULES

FED. R. CIV. P. 12(b)(6) ................................................................2, 3, 6

FED. R. CIV. P. 56 ........................................................................ 3, 6

FED. R. CIV. P. 58(b) ...................................................................... 1

# OTHER AUTHORITY

Jeffrey J. Phillips, *Clean Air Never Smelled So Bad: Union Oil Co. Of California v. Atlantic Richfield Co.*, 38 HOUS. L. REV. 1557 (2002)...... 11, 12

## STATEMENT OF RELATED CASES

No case is known to Plaintiff-Appellant Iris Corporation's ("IRIS")
counsel to be pending in this or in any other court that will directly affect
this Court's decision in the instant appeal.

## JURISDICTIONAL STATEMENT

This action arises under the Patent Laws of the United States, Title 35 of the United States Code.

This appeal is from a final judgment, entered by the United States District Court for the Eastern District of New York pursuant to Fed. R. Civ. P. 58(b). The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

This Court has exclusive jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

Does Defendant-Appellee Japan Airlines International Co., Ltd. ("JAL"), a commercial airline, have the right to infringe plaintiff's patent during the course of its operations, without compensating plaintiff, when the act of infringement is committed in fulfillment of one of the numerous obligations imposed upon commercial airlines as a condition of doing business; specifically the obligation to examine passengers' electronic passports as required by the Enhanced Border Security Act, 8 U.S.C. § 1221, *et seq.*?

## STATEMENT OF THE CASE

IRIS, the owner of U.S. Patent No. 6,111,506 (the "'506 patent," which covers, *inter alia*, a method of manufacturing an electronic passport), commenced the instant litigation in the District Court on November 28, 2006. (A16, A71) The complaint alleges, in pertinent part, that foreign countries, including Japan, that participated in the U.S. Visa Waiver program were required to and in fact have begun issuing electronic passports to their citizens; these passports are manufactured according to a process covered by IRIS' '506 patent. (A16-18, A72-73)

Further, JAL had acted as a member of a Japanese Government Working Group for introducing electronic passports. (A18, A73) Moreover, as part of its commercial operations at New York City's John F. Kennedy International Airport ("JFK") (located in the Eastern District of New York), JAL used electronic passports as part of its check-in procedures. (A19, A74)

Finally, the complaint alleges that since electronic passports used by JAL as part of its check-in procedures had been manufactured according to the IRIS '506 patented process, JAL's unauthorized use of these electronic passports constitutes an infringement under 35 U.S.C. § 271(g). (A74-75)

In lieu of an answer, on June 1, 2007 JAL filed a rule 12(b)(6) motion arguing that:

1.     An electronic passport is not a "product" under 35 U.S.C. §
       271(g) (A19-20);

2.     JAL's use of an electronic passport is not a "use" under 35
       U.S.C. § 271(g) (A19-20);

3.     Even if JAL's use of an electronic passport is the "use" of a
       "product" under 35 U.S.C. § 271(g), JAL's use could not be an
       infringement because plaintiff is barred from suing by virtue of
       28 U.S.C. § 1498(a) (A20);

4.     Even if 28 U.S.C. § 1498(a) does not protect JAL from
       infringement damages, the requirement of the Enhanced Border
       Security Act – that commercial airlines examine the passports
       of passengers upon check-in at U.S. airports – exempts JAL
       from having to pay infringement damages (A20); and

5.     In addition to the above, foreign treaties that require
       commercial airlines to examine the passports of its passengers
       exempt JAL from having to pay infringement damages under
       the doctrine of "foreign sovereign compulsion." (A20)

On September 30, 2009, the District Court, treating the Rule 12(b)(6)
motion as a Rule 56 motion, granted JAL's motion to dismiss as a matter of
law on the grounds that the Enhanced Border Security Act conflicts with and

renders the Patent Laws subordinate to it, precluding the recovery of patent infringement damages. (A14, A44)

Addressing JAL's other arguments for dismissal, the court below:

1.  rejected JAL's argument that an electronic passport is not a "product" under 35 U.S.C. § 271(g) (A6, A32);

2.  rejected JAL's argument that examination of passports does not constitute "use" under 35 U.S.C. § 271(g) (A7-8, A35);

3.  rejected JAL's argument that plaintiff is barred from suing by virtue of 28 U.S.C. § 1498(a) (A14); and

4.  declined to opine on JAL's argument regarding the doctrine of foreign sovereign compulsion. (A14, A46)

This is an appeal from that dismissal as a matter of law.

## STATEMENT OF FACTS

As mentioned above, IRIS is the owner of the '506 patent, which covers, *inter alia*, a method of manufacturing an electronic passport. (A16, A71)

JAL is a commercial airline, and uses electronic passports as part of its check-in procedures at New York's JFK Airport. (A19, A74) JAL does not have a license to use electronic passports manufactured according to IRIS' patented process. (A75)

The electronic passports used by JAL as part of its check-in procedures were manufactured according to the '506 patented process, and therefore JAL's unauthorized use of these electronic passports constitutes an infringement under 35 U.S.C. § 271(g). (A74-75)

## SUMMARY OF ARGUMENT

The District Court erred in holding that the Enhanced Border Security Act conflicts with and renders the Patent Laws subordinate to it, thereby precluding the recovery of patent infringement damages.

There is no conflict between a statute requiring a commercial entity, as a condition precedent to doing business, to use a product it may have to purchase from another, and the Patent Laws of the United States, which provide for compensation to a patent owner when a commercial entity infringes upon the owner's patent.

In this case, the Enhanced Border Security Act, in pertinent part, requires commercial airlines to examine the passports of its passengers. 8 U.S.C. § 1221(c). The Enhanced Border Security Act does not provide any immunity from patent infringement damages, just as it does not exempt an airline from paying for the services of its employees, or for the equipment it may need to purchase, to comply with the Enhanced Border Security Act.

JAL is a profit making enterprise in a highly regulated industry. *See, e.g., Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 846 (11th Cir. 1999) (international airline industry is highly regulated). It is forced to make expenditures to comply with numerous government regulations. JAL has the right to decide whether its profits justify the cost of complying with these statutes and regulations.

A patent is the personal property of its owner. 35 U.S.C. § 261. Infringement of a patent is a statutory tort, or trespass, entitling its owner to compensation. 35 U.S.C. § 284. JAL can comply with the Enhanced Border Security Act by examining passenger passports, and, at the same time, comply with the Patent Laws of the United States by paying IRIS for use of products manufactured according to the '506 patented process.

There is no conflict between the two statutes, and the dismissal solely based upon a conflict should be reversed.

## STANDARD OF REVIEW

The court reviews an appeal of the grant of a Rule 12(b)(6) motion, or the grant of a motion for an order of dismissal under Rule 56, *de novo*. *Jentoft v. U.S.*, 450 F.3d 1342, 1346 (Fed. Cir. 2006).

Decisions based upon conflict of laws, as in the case at bar, are questions of law which this Court decides for itself without deference to the district court. *Id.*

## ARGUMENT

### I. There Is No Conflict Between The Enhanced Border Security Act, 8 U.S.C. § 1221 *et seq.*, And The Patent Laws Of The United States, Particularly 35 U.S.C. § 271(g)

There are numerous rules and regulations governing commercial entities in the United States, including, but not limited to, those that place conditions on the operation of commercial airlines. *See* 14 C.F.R. §§ 1.1 – 135.443 (2009). A government regulation which requires an entity to buy or lease another's property (whether tangible or intangible) to do business does not translate into a license to take that property free of charge.[1] Complying with government regulations is often a significant expense for corporations in many different industries.

The Enhanced Border Security Act does not contain any exemption allowing JAL to use IRIS' patent for free. Had Congress intended the

---

[1] It is respectfully submitted that a judicial or statutory ruling allowing one commercial entity to take another's private property to carry out its business would constitute a violation of due process. *See Florida Prepaid Educ. Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 643 (1999).

Enhanced Border Security Act to alter or amend the Patent Act, it would have included an explicit exemption among its provisions. It did not.[2]

Certain statutes explicitly provide for mandatory licenses of technology needed by commercial entities, such as the Clean Air Act and the Atomic Energy Act (*see e.g.*, 42 U.S.C. §§ 7608 and 2183(c)-(e), respectively). Those statutes specifically provide for mandatory compensation to the patentee for such use, in the form of license payments. Neither of those statutes states that a mandatory license is free. Indeed, such a statutory provision would violate the due process clause. *See Florida Prepaid*, *supra*, note 1.

It is therefore respectfully submitted that the absence of an express creation of a mandatory license in the Enhanced Border Security Act, coupled with the statutory obligation of an infringer to pay damages under 35 U.S.C. § 284, demonstrates that there is no conflict between the Enhanced Border Security Act and the Patent Laws of the United States.

---

[2]    In addition, the Patent Act itself contains explicit exemptions from patent infringement liability. *See, e.g.*, 35 U.S.C. §§ 271(e)(1) and 272. Compliance with the Enhanced Border Security Act is not among them.

### A. The Fact That JAL Is Required To Use Passports In The Course Of Its Voluntary Commercial Business Activities Does Not Exempt It From Patent Infringement Liability

A patent "has the attributes of personal property." 35 U.S.C. § 261. JAL uses the rights covered by IRIS' '506 patent in the course of its commercial operations. To operate its for-profit business, JAL needs to make numerous expenditures, including hiring personnel, buying or leasing equipment, and complying with government regulations. In complying with the Enhanced Border Security Act, JAL uses products in a manner that violates IRIS' intellectual property rights, obligating JAL to compensate IRIS for that use.

JAL was not drafted into the commercial airline business. If JAL determined that the cost of compliance with any of the applicable rules or regulations was too burdensome, it could have chosen not to engage in that commercial activity. *See State Contracting & Eng'g Corp. v. Condotte Am. Inc.*, 346 F.3d 1057, 1072 (where a state agency "incorporated the patented process into its bid specifications . . . the contractors' choice was therefore to use the patent process [and pay for it] or to decline to bid on the contracts").

Numerous federal, state, and foreign regulations govern aspects of commercial airline operation. By way of example, certain aircraft are required by law to have at least one hand fire extinguisher (14 C.F.R. §

135.155), a sufficient number of oxygen dispensers (14 C.F.R. § 135.157),

an altimeter adjustable for barometric pressure (14 C.F.R. § 135.149), an

approved cockpit voice recorder (14 C.F.R. § 135.151), a terrain awareness

and warning system (14 C.F.R. § 135.154), and a shoulder harness for each

crew member station (14 C.F.R. § 135.171). Yet, it cannot reasonably be

disputed that an airline must procure, **at its own expense**, these mandated

pieces of equipment. JAL has no more of a right to the free use of IRIS'

'506 patent than it has to free fire extinguishers, free oxygen dispensers, free

altimeters, free voice recorders, or free use of any other equipment integral

to its business.

### 1. There Is No Conflict Between 35 U.S.C. § 271(g) And The Enhanced Border Security Act

"[W]hen two statutes are capable of co-existence, it is the duty of the

courts, absent a clearly expressed congressional intention to the contrary, to

regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). 35

U.S.C. § 271(g) and the national security laws are capable of co-existence.

Commercial air travel is not the only industry burdened with rules and

regulations that require utilizing the tangible or intangible property of

another. For example, a patent owned by the Union Oil Company of

California ("Unocal") covered "[federal and state] regulations" aimed at

reducing vehicle tailpipe emissions of certain gasoline components, and,

10

therefore, "pose[d] a potential legal obstacle to other refiners who wish[ed] to comply with these regulations by developing their own gasoline formulations." Jeffrey J. Phillips, *Clean Air Never Smelled So Bad: Union Oil Co. Of California v. Atlantic Richfield Co.*, 38 HOUS. L. REV. 1557, 1567 (2002). Nevertheless, Unocal was able to successfully pursue an action against several refiners for infringement of that patent. *See Union Oil Co. Of Cal. v. Atl. Richfield Co.*, No. 95-2379, 1998 U.S. Dist. LEXIS 22847, at *16-17 (C.D. Cal., Mar. 6, 1998) (upholding jury verdict of infringement). Thus, "[t]he mere fact that Unocal's protected patent rights overlap with government-mandated [reformulated gasoline] requirements does not automatically make the patent invalid." 38 HOUS. L. REV. at 1567, n.59. Indeed, the court enforced Unocal's patent, holding there was infringement, and awarding damages. *Union Oil Co. Of Cal. v. Atl. Richfield Co.*, 34 F. Supp. 2d 1208, 1210 (C.D. Cal. 1998) (the jury awarded to Unocal damages in the form of a reasonable royalty).

Federal law frequently requires industries to make use of patented features, without granting compulsory licenses or invalidating the patents, thus requiring payment for use of the intellectual property. For example:

> [P]atented automobile features such as seat belts and air bags
> are required by federal law for American automobiles.
> Approximately 318 seat belt patents are listed in the U.S.P.C.
> Index under Class 280, Subclass 801.1. ... ("Apparatus

11

wherein the vehicle is provided with a flexible, straplike member engageable with the body of a vehicle occupant and preventing, restraining, or limiting movement of the occupant relative to the vehicle...."). Seat belts are required in automobiles by federal regulation through 49 C.F.R. § 571.208 S4.1.5.1(a)(2) (2000) (referencing the Standard No. 209 seat belt assembly that is specifically defined in 49 C.F.R. § 571.209). Approximately 426 air bag patents are listed in the U.S.P.C. Index under Class 280, Subclass 728.1. ... ("Devices wherein the attachment comprises a bag designed to inflate upon impact of the vehicle with an external object and thereby confine a vehicle occupant in a protective environment...."). Air bags have been required in automobiles since Sept. 1, 1997, according to guidelines set forth in 49 C.F.R. § 571.208 S4.1.5.3.

38 HOUS. L. REV. at 1567, n.59.

Similarly, the Federal Circuit upheld a damages award even though the infringer was forced to make use of a patent in compliance with a government contract. *State Contracting*, 346 F.3d at 1072. In *State Contracting*, the "[Florida Department of Transportation] incorporated the patented process into its bid specifications, [and] the contractors [defendants] were not free to disregard the bid specifications and implement an alternative design." *Id.* "The contractors' choice was therefore to use the patented process or to decline to bid on the contracts." *Id.* Infringement was found, damages were awarded, and the award was upheld on appeal. *Id.* at 1072-74.

Exemptions from liability for patent infringement, a statutory tort, in the limited situations where such exemptions exist, are **explicitly provided for** under carefully-prescribed circumstances. *See e.g.*, 35 U.S.C. § 271(e)(1) (providing a limited exception to "make, use, offer to sell, or sell within the United States or import into the United States a patented invention ... solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products")[3] (emphasis added); 35 U.S.C. § 272 (providing a limited exception for "[t]he use of any invention in any vessel, aircraft or vehicle ... entering the United States temporarily or accidentally").

---

[3]     Prior to the enactment of 35 U.S.C. § 271(e)(1), the use for commercial development purposes of a patented drug was an act of infringement, even if such use was necessary to obtain FDA approval. *See Roche Prods., Inc. v. Bolar Pharm. Co.*, 733 F.2d 858 (Fed. Cir. 1984); *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1568 (Fed. Cir. 1997) (noting that *Roche* was overruled by 35 U.S.C. § 271(e)(1)). In *Roche*, the Federal Circuit rejected defendant's argument that "public policy requires [the creation of] a new exception to the use prohibition" based on a perceived conflict between the Federal Food, Drug, and Cosmetic Act and the Patent Act. *Roche*, 733 F.2d at 863-64. The Federal Circuit held that to do so would be tantamount to "engag[ing] in legislative activity proper only for the Congress." *Id.*; *see also id.* at 865 ("Where Congress has the clear power to enact legislation, our role is only to interpret and apply that legislation. '[I]t is not our job to apply laws that have not yet been written.'") (*quoting Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984)).

Nothing in the Enhanced Border Security Act addresses any aspect of the Patent Laws. Had Congress intended the Enhanced Border Security Act to amend the Patent Act (for example, by providing a royalty-free license to those entities required to use another party's patent to comply with the Enhanced Border Security Act's provisions), it would have specifically so legislated.

Legislation has been enacted in other areas that explicitly provides for a compulsory license, coupled with reasonable compensation for the patent owner (as it must to pass muster under the due process clause of the Fifth Amendment). Thus, for example, the Clean Air Act specifically provides that, where a patent is "necessary to enable any person required to comply with" certain provisions of the Act (and other conditions are satisfied), "the Attorney General may so certify to a district court of the United States, which may issue an order requiring the person who owns such patent to **license it on such reasonable terms and conditions** as the court, after hearing, may determine." 42 U.S.C. § 7608 (emphasis added). *See also* 42 U.S.C. § 2183(c)-(e) (the Atomic Energy Act provides a mechanism for determining whether a compulsory patent license should be imposed, and upon an affirmative determination, requires that the license be defined by "**terms deemed equitable** by the Commission and **generally not less fair**

than those granted by the patentee or by the Commission to **similar licensees for comparable use**") (emphasis added).

### 2. *SmithKline Beecham*, A Copyright Case, Has No Relevance To The Patent Case At Bar

The District Court's reliance on *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*, 211 F.3d 21 (2d Cir. 2000), is misplaced. In *SmithKline*, the defendants manufactured a generic version of nicotine polacrilex gum to compete with plaintiff's "pioneer" Nicorette product. 211 F.3d at 23. To obtain approval from the FDA, the defendants had to comply with the requirements of the Hatch-Waxman Amendments. *Id.* The Hatch-Waxman Amendments require that a generic drug's labeling be the "same" as that of the pioneer drug. *Id.* As a result, the defendants' generic drug was accompanied by labeling that was "virtually identical" to the pioneer drug's labeling. *Id.*

The plaintiff brought a copyright action, alleging willful copyright infringement, to prevent the defendant from using this labeling. *Id.* at 23-24. The Second Circuit examined the conflict between the Copyright Act and the Hatch-Waxman Amendments. *Id.* at 27. The court held that the purpose of the Hatch-Waxman Amendments would be undermined if the plaintiff's copyright action was successful. *Id.* at 28. These amendments were designed to facilitate the approval of generic drugs, bringing competition to

the marketplace quickly. *Id.* at 25. If copyright law were to prevail, it often would be impossible for generic drug manufacturers to win FDA approval. *Id.* at 28.

The Second Circuit reasoned that this result would not undermine the purpose behind the Copyright Act. *Id.* at 28-29. The court explained that the plaintiff's motivation was to obtain FDA approval for its drugs, and the resulting exclusivity period, free from competition. *Id.* at 29. The creation of labeling for the drugs was "ancillary" to the FDA's administrative process. *Id.* at 28. The plaintiff's profits came from selling pharmaceuticals, not from creating drug labels. *Id.* at 29.

The present case is different from *SmithKline*.

First, the *SmithKline* court observed that, due to the conflicting statutes, the defendant would have either to alter its label and lose FDA approval, or to infringe the plaintiff's copyright. *Id.* at 27. No such dilemma exists here. JAL can comply with the Enhanced Border Security Act and avoid infringing the '506 patent if it simply respects IRIS' intellectual property rights and pays a reasonable licensing fee.

Second, the court in *SmithKline* held that allowing the defendant to use the same drug label as the plaintiff would not undermine the Copyright Act. *Id.* at 28-29. Here, allowing JAL to use IRIS' patented property

without compensation **would** undermine the policies behind the Patent Laws of the United States. The Patent Laws are designed to encourage scientific innovation by granting inventors a property right in their inventions. *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995). Allowing JAL to infringe IRIS' patent without compensation destroys the incentive for companies like IRIS to develop new products. The Enhanced Border Security Act is designed to improve our national security by using sophisticated technology to accurately identify foreign citizens entering the United States. 8 U.S.C. § 1211. Implicit in this design is the need for advanced technology, exactly what IRIS developed and patented. Not compensating IRIS for developing technology undermines the purpose of the Patent Laws, by destroying the incentive for IRIS and other companies to develop and manufacture the products needed to protect us in this digital age.

The District Court utilized the *SmithKline* framework in making its decision. (A11) It reasoned that "creating an exception to patent enforcement in this limited context will hardly open the floodgates to widespread uncompensated infringement." *Id.* Respectfully, the District Court misjudged the effect of its decision. The concern in allowing JAL to

infringe IRIS' patent is not in the proliferation of uncompensated infringement, but in the destruction of the incentive for companies to develop new products. Additionally, the District Court held that JAL had no control over the types of passports used by its passengers, and therefore "no way to avoid the allegedly infringing activity." *Id.* However, JAL did have a choice; it chose to operate in the United States, knowing that laws like the Enhanced Border Security Act require significant expenditures. As detailed above, numerous statutes specifically require parties to use patented property, and nothing in those statutes provides that the use is free.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the judgment of the District Court should be reversed and remanded.

Dated:  December 23, 2009

Stephen Norman Weiss
Gregory J. Fleesler
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Phone:  212-554-7800
Fax:  212-554-7700

*Counsel for Appellant*

# ADDENDUM

FIL~~
IN CLERK~~
U S DISTRICT C~~          ~~.N.Y.

＊ OCT 2 - ~

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
IRIS  CORPORATION,

                      Plaintiff,

  -against-


JAPAN  AIRLINES INTERNATIONAL CO.,
LTD.,

                   Defendant.
----------------------------------------------------------------X

JUDGMENT
06-CV- 6336 (CBA)

      A Memorandum and Order of Honorable Carol Bagley Amon, United States

District Judge, having been filed on September 30, 2009, adopting the Report and

Recommendation, dated January 14, 2008; and granting the defendant's motion to dismiss;

it is

      ORDERED and ADJUDGED that plaintiff take nothing of the defendant; that the

Report and Recommendation is adopted; and that the defendant's motion to dismiss is

granted.


Dated:  Brooklyn, New York
       October 02, 2009

                    s/ RCH
                    ROBERT C. HEINEMANN
                    Clerk of Court

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IRIS CORPORATION,

                                                        NOT FOR PUBLICATION
                        Plaintiff,                      **MEMORANDUM & ORDER**
                                                        06-CV-6336 (CBA)
        -against-

JAPAN AIRLINES INTERNATIONAL CO.,
LTD.,

                        Defendant.
------------------------------------------------------------X
AMON, United States District Judge.

        Plaintiff IRIS Corporation ("IRIS") filed suit against defendant Japan Airlines

International Co., Ltd. ("Japan Airlines") alleging direct infringement of U.S. Patent No.

6,111,506, in violation of 35 U.S.C. § 271(g). On June 1, 2007, Japan Airlines moved to dismiss

the action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P.

12(b)(6). By order dated June 4, 2007, this Court referred the motion to the Honorable Kiyo A.

Matsumoto, then United States Magistrate Judge, for a Report and Recommendation.

        The Court has received the Report and Recommendation ("R&R"), dated January 14,

2008, recommending that defendant's motion be granted. IRIS and Japan Airlines both filed

timely objections to the R&R. After reviewing the objections to the R&R, this Court solicited

the views of the United States on issues raised in this motion. The United States filed its

Statement of Interest on August 7, 2008. Having reviewed all of these materials and for the

reasons set forth below, the Court adopts Judge Matsumoto's R&R as its opinion and grants

Japan Airlines' motion to dismiss.

1

I.      **Background[1]**

IRIS's amended complaint alleges patent infringement by Japan Airlines stemming from

Japan Airlines' examination of passenger passports at its terminal in New York's John F.

Kennedy International ("JFK") Airport and other check-in locations within the United States.

IRIS is the assignee of U.S. Patent No. 6,111,506 (the "'506 patent"), entitled "Method of

Making an Improved Security Identification Document Including Contactless Communication

Insert Unit." The '506 patent contains claims directed to a process for manufacturing a secure

electronic passport consisting of a computer chip embedded in a multi-layered document which

contains biographical or biometric data about the passport holder.

Japan Airlines examines passports at its terminal within JFK Airport pursuant to federal

laws and regulations, including the Enhanced Border Security Act, 8 U.S.C. § 1221 et seq., the

Visa Entry Reform Act of 2002, 19 C.F.R. § 122.75a, and applicable international treaties. The

passport examinations occur prior to each departing flight and after each arriving flight.

IRIS brings its patent infringement claim pursuant to 35 U.S.C. § 271(g) which provides

that:

> Whoever without authority imports into the United States or offers to sell,
> sells, or uses within the United States a product which is made by a
> process patented in the United States shall be liable as an infringer, if the
> importation, offer to sell, sale, or use of the product occurs during the
> term of such process patent.

35 U.S.C. § 271(g). IRIS alleges that the passports of Japan Airlines passengers were made

using their patented '506 process, that they constitute "products" as defined by the patent laws,

---

[1] Judge Matsumoto's Report and Recommendation sets forth the factual background of this motion in detail. (See R&R at 2-6.)

and that Japan Airlines' inspection of the passports at their terminal constitutes an infringing "use" under § 271(g).

## A.    Motion to Dismiss

Japan Airlines raises four arguments in its motion to dismiss. First, it claims that the terms "product" and "use" in 35 U.S.C. § 271(g) do not encompass the government-owned electronic passports handled by Japan Airlines because passports are not "products" under the § 271(g) definition and Japan Airlines does not "use" the issued passports as a manufacturer, importer, seller or purchaser in the chain of commercial distribution and supply. Second, Japan Airlines contends that if its examination of passports is found to constitute infringement under 271(g) then federal laws requiring the examination of passports conflict with patent laws and must be reconciled by exempting Japan Airlines from infringement. Japan Airlines further argues that IRIS's claim is barred under the "doctrine of foreign sovereign compulsion" because the airline is compelled by foreign sovereigns to examine passports. Finally, insofar as IRIS's claims relate to U.S. passports, Japan Airlines contends that it is immune from suit and IRIS's exclusive remedy is against the U.S. government in the Court of Federal Claims pursuant to 28 U.S.C. § 1498(a).

The Report & Recommendation rejects Japan Airlines' contention that its conduct does not fall within the provisions of 271(g). Specifically, the R&R found that passports which were manufactured using the patented '506 process are "products" for the purposes of 35 U.S.C. § 271(g) and Japan Airlines' examination of the passports at its terminal constitutes a "use" under the statute. The R&R found more persuasive Japan Airlines' alternative argument—that 35 U.S.C. § 271(g) conflicts with the Enhanced Border Security Act of 2002, 8 U.S.C. § 1221

3

et seq. The R&R resolved this conflict by considering the underlying purposes of both statutes as well as the statutes' priority of enactment and concluded that Japan Airlines should not be held liable under § 271(g) for infringement of the '506 patent because of its compliance with the Enhanced Border Security Act. Accordingly, the R&R recommends that IRIS' amended complaint be dismissed. In light of this conclusion, the R&R declined to address Japan Airlines' remaining two grounds for dismissal.

### B.   Objections

IRIS and Japan Airlines filed timely objections to the R&R. IRIS objects to the finding that a conflict exists between 35 U.S.C. § 271(g) and the Enhanced Border Security Act, and to the R&R's reliance on SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21 (2d Cir. 2000). Japan Airlines, while concurring with the R&R's recommendation that its motion be granted, objects to the R&R's conclusion that Japan Airlines' examination of passports constitutes a "use" of a "product" under 35 U.S.C. § 271(g). Rather than finding that a conflict exists between § 271(g) and the Enhanced Border Security Act, Japan Airlines argues that the preferred approach would be to construe § 271(g) to avoid a conflict by analyzing the terms "use" and "product" to exclude the examination of passports. Lastly, while Japan Airlines agrees with the R&R that, for reasons of judicial economy, the Court need not address its remaining two grounds for dismissal, it reasserts these arguments in its objections to the extent that this Court does not adopt the R&R on other grounds.

## II.   Discussion

This Court reviews the R&R de novo. See Fed. R. Civ. P. 72(b)(3). It turns first to the objections of Japan Airlines.

4

Add. 5

A.     "Product" and "Use" under 35 U.S.C. § 271(g)

35 U.S.C. § 271(g) provides a remedy for process patent holders when the claimed process is employed outside the United States and the resulting products are imported into the United States or offered for sale, sold, or used domestically.  In its motion papers and again in the objections to the R&R, Japan Airlines contends that the electronic passports at issue in this case are not "products," and the airline's inspection of the passports is not a "use" under the proper interpretation of § 271(g).

The R&R concluded that the word "product" is not limited to products with a commercial purpose.  In reaching this conclusion, the R&R relied upon well-established principles of statutory interpretation, including examination of the statutory language itself to determine the ordinary meaning of the term at issue.  (See R&R at 11-13.)  The R&R also noted that the Federal Circuit has never interpreted the word "product" as containing a commercial component and properly found that the word refers to any "physical article that was manufactured."  (Id. at 13-14.)  Further, the R&R cited to ample evidence that Congress considered the legislative purpose of the statute and deliberately declined to limit the word "product" to commercial products.  (Id. at 14-16.)

In its objections to the R&R, Japan Airlines argues that the word "product" is ambiguously defined in § 271(g), and that the R&R failed to adequately consider the legislative history of the section in resolving the ambiguity.  To the contrary, the R&R directly addressed these arguments and found them wanting.  (Id. at 14-15.)  Japan Airlines does not point to any part of the statute's legislative history which would indicate that Congress intended to limit this remedy to commercial products.

5

Add. 6

The R&R also found that Japan Airlines' inspection of the passports constitutes a "use" for the purposes of 35 U.S.C. § 271(g). The R&R considered the ordinary dictionary meaning of the term "use" as well as the Federal Circuit's history of interpreting the term broadly in this section of the patent statute. (See R&R at 19-20.) The R&R concluded that Japan Airlines' use of the electronic passports to identify its passengers and compile passenger lists is the very use for which the passports are intended and thus constitutes a "use" under the patent statute.

In its objections, Japan Airlines argues that its handling of issued passports is involuntary and outside of any commercial distribution and supply chain for passports, and therefore beyond the scope of § 271(g). In support of its contention, Japan Airlines once again refers the Court to the legislative history of the section.

Questions of statutory interpretation begin with the language of the statute itself. See Bull v. United States, 479 F.3d 1365, 1376 (Fed. Cir. 2007). Where ambiguity persists after analysis of the statutory language, it is appropriate to resort to legislative history to determine Congressional intent. Hoechst Aktiengesellschaft v. Quigg, 917 F.2d 522, 526 (Fed. Cir. 1990) ("[w]hen faced with such [statutory] ambiguity it is incumbent upon this court to examine the legislative history to discern Congress' intent"). However, there is a "strong presumption in favor of the plain language of the statute." Id. at 1377; See also Garcia v. United States, 469 U.S. 70, 75 (1984) ("While we now turn to the legislative history as an additional tool of analysis, we do so with the recognition that only the most extraordinary showing of contrary intentions from those data would justify a limitation on the 'plain meaning' of the statutory language.").

This Court concurs with the R&R's finding that the examination of passports constitutes

6

a "use" of the passports under § 271(g) based on the ordinary meaning of "use" and review of United States Supreme Court and Federal Circuit decisions construing the term broadly. (See R&R at 18-19.) The Court notes that even if it considered legislative history for guidance in interpreting the word "use" in § 271(g), Japan Airlines has not pointed to any "extraordinary showing of contrary intentions" in the legislative history that would justify the limited interpretation it seeks. Garcia, 469 U.S. at 75. Accordingly, the Court adopts the R&R's finding that Japan Airlines' examination of passports constitutes a "use" under 35 U.S.C. § 271(g).

C.     Conflict between 35 U.S.C. § 271(g) and The Enhanced Border Security Act

Having determined that the allegations contained in IRIS's amended complaint were sufficient to constitute "use" of a "product" under 35 U.S.C. § 271(g), the R&R next considered the question of whether in this case a conflict exists between § 271(g) and the Enhanced Border Security Act. The R&R reasoned that because Japan Airlines is required to inspect passenger passports under the Enhanced Border Security Act, and compliance with this law requires using a product that was made by a patented process, a conflict exists between the Enhanced Border Security Act and the patent laws. (R&R at 24-26.)

For guidance in resolving the conflict between the requirements of the Enhanced Border Security Act and the protections offered to patent holders under 35 U.S.C. § 271(g), the R&R relied on the decision of the Second Circuit in SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21 (2d Cir. 2000). SmithKline involved a conflict between the Hatch-Waxman Amendments and the Copyright Act. The Second Circuit resolved the conflict by examining the underlying purposes of the conflicting statutes and adopting "the

7

Add. 8

interpretation that preserves the principal purposes of each." <u>SmithKline</u>, 211 F.3d. at 27-28

(citing <u>Zenith Elecs. Corp. V. Exzec, Inc.</u>, 182 F.3d 1340, 1347 (Fed. Cir. 1999)). The

<u>SmithKline</u> court also gave weight to the statutes' priority of enactment in determining that the

purposes of the earlier-enacted Copyright Act would not be undermined by the court's decision

that the Hatch-Waxman Amendments took precedence over it. <u>Id.</u> at 28 n.3 (citing <u>FDA v.</u>

<u>Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120 (2000)).

Following the analytical framework set forth in <u>SmithKline</u>, the R&R found that the

principal purpose of § 271(g) is to protect process patents holders from economic loss when the

holder's patented process is performed abroad and the products of that process are brought into

the United States. Any abrogation of the exclusive rights of the patent holder would undermine

the overall purpose of the patent statute, namely, "to promote the progress of science." U.S.

Const. Art. I, § 8. The R&R concluded, however, that the national security interests which

underlie the Enhanced Border Security Act outweigh the interest in protecting a process patent

holder's rights under § 271(g) of the patent statute. (<u>See</u> R&R at 24-25.) In weighing the patent

interests, the R&R conceded that if infringement is permitted without recourse to damages

incentive to create is diminished. The R&R further observed that IRIS had not alleged in its

complaint that it had not been compensated for licensing or manufacturing the patent. (R&R at

27-28.) The R&R also considered the statutes' priority of enactment—the fact that the

Enhanced Border Security Act was enacted fourteen years after the patent statute was amended

to include § 271(g) favored the conclusion that the Enhanced Border Security Act should

override § 271(g).

Both parties object to Judge Matsumoto's conclusion that a conflict exists between 35

U.S.C. § 271(g) and the Enhanced Border Security Act. IRIS argues that there is no conflict because Japan Airlines can comply with both statutes by compensating IRIS for the use of passports made by its patented process. IRIS also contends that the R&R's analysis is flawed because it relied on the failure of IRIS to allege it was not compensated for manufacturing or licensing the '506 patent by the passport manufacturers. IRIS states it could easily amend its complaint to make that allegation. Although supporting the reasoning of the R&R as an alternate grounds to dismiss the case, Japan Airlines argues that the conflict between the Enhanced Border Security Act and § 271(g) is more properly resolved by construing the terms "product" and "use" in § 271(g) to exclude examination of electronic passports.

The Court agrees with the R&R's finding that in this case a conflict exists between the Enhanced Border Protection Act and 35 U.S.C. § 271(g). It is undisputed that the Enhanced Border Protection Act requires Japan Airlines to examine the passports of departing passengers at domestic airports and therefore the airline must infringe IRIS's '506 patent, assuming, arguendo, that IRIS's claim has merit. Further, the Court concurs with the R&R's analysis and conclusion that the national security interests protected by the Enhanced Border Protection Act outweigh IRIS's commercial interest in its patent under § 271(g).

IRIS's objections to the R&R are not persuasive. First, IRIS mischaracterizes the R&R's findings by claiming that the R&R based the decision principally on the fact that IRIS failed to allege it was not compensated for any manufacturing or licensing of the patented process. The R&R did mention this fact in weighing the patent interests but it did not rely exclusively or even substantially on this fact in finding that the security interests trumped the patent interests in this case. The compensation issue was one of several factors relied upon in reaching the R&R's

9

Add. 10

recommendation. Moreover, in weighing the patent interests, this Court notes that creating an exception to patent enforcement in this limited context will hardly open the floodgates to widespread uncompensated infringement. This case is not within the heartland of patent infringement suits. Japan Airlines, the alleged infringer, is not a competitor of the plaintiff nor does it derive any commercial or financial benefit from the alleged infringing activities which an Act of Congress compels it to commit.

The Court also finds unpersuasive IRIS's argument that a conflict between the Enhanced Border Protection Act and § 271(g) may be avoided by mandating that Japan Airlines secure a license from IRIS. This Court concurs with the R&R's finding that requiring Japan Airlines to secure a license is not a satisfactory resolution of this conflict. IRIS argues that other U.S. regulations governing the operation of commercial airlines require airlines to buy or lease property from others; and, in those situations, there is no authority to take the property free of charge. IRIS analogizes commercial airlines's purchase of certain property—such as seatbelts and high-frequency radios—to Japan Airlines's use of the patented passports at check-in locations. The Court finds this analogy unpersuasive. In this case, Japan Airlines is not being provided passports for free. Rather, it is compelled to examine them pursuant to laws designed to protect the national security of the United States. The airline has no control over the types of passports presented to it for inspection and has no way to avoid the allegedly infringing activity. And, as noted above, it obtains no commercial benefit whatsoever from its allegedly infringing action.

### D.    Relevance of 28 U.S.C. § 1498(a)

In its Statement of Interest, the United States cautions this Court not to resolve this case on

10

the grounds set forth in the R&R and not to extend the reasoning of the <u>Smith Kline</u> decision to

a case involving patents.  The United States argues that there is no conflict between the Patent

Act and the Enhanced Border Security Act because § 1498(a) of Title 28 exempts Japan Airlines

from an infringement action under the Patent Act for examination of both U.S. passports and

foreign passports.[2]  (<u>See</u> Statement of Interest of the United States ("Stmt. Int.") at 8-13.)  It

faults the R&R for not addressing this threshold issue.

> Section 1498(a) provides in pertinent part:
>
> Whenever an invention described in and covered by a patent of the United States
> is used or manufactured by or for the United States without license of the owner
> thereof or lawful right to use or manufacture the same, the owner's remedy shall
> be by action against the United States in the United States Court of Federal
> Claims. . . . For the purposes of this section, the use or manufacture of an
> invention described in and covered by a patent of the United States by a
> contractor, or any person, firm, or corporation for the Government and with the
> authorization or consent of the Government, shall be construed as use or
> manufacture for the United States.

28 U.S.C. §1498(a).

The United States points out in its Statement of Interest that 1498(a) serves two

purposes.  It acts as a waiver of sovereign immunity for claims against the government in

the U.S. Court of Claims, and also codifies an affirmative defense for private parties who

can show that its use of the infringing invention is both "for the government" and with the

"authorization" or "consent" of the government.  According to the United States, there is

nothing in the statute that requires these two purposes to be coextensive.  The United

---

[2] Japan Airlines in its original motion to dismiss claimed immunity only for its
examination of U.S. passports.  The United States provides no sound explanation for the
applicability of Section 1498(a) to foreign passports in circumstances where there is no claim
that as to foreign passports the United States engaged in any infringing activity.

States delivers to IRIS the bad news and the bad news: IRIS has no claim against the United States because the United States has not waived sovereign immunity under § 1498(a) for § 271(g) violations, but Japan Airlines nonetheless is immunized under § 1498(a) from private suits for these same violations.  Based on the cogent reasoning of the decision of the Court of Federal Claims in Zoltek Corp. v. United States, 85 Fed Cl. 409 (Fed. Cir. 2009), this Court rejects this reading of § 1498(a).

IRIS and the United States agree that the United States has not waived immunity under § 1498(a) for acts of infringement under § 271(g) of Title 35.  NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282 (Fed Cir. 2005); Zoltek Corp v. United States, 442 F.3d 1345 (Fed. Cir. 2006) (direct infringement under § 271(a) is a necessary predicate for liability under section 1498).  Had the government waived immunity under § 1498(a), it is clear that Japan Airlines would be immunized against private suits.  A party is exempt from patent infringement suits under § 1498(a) where: "(1) the accused use or manufacture was undertaken for the Government, i.e., for the Government's benefit; and (2) the Government gave its authorization or consent for the accused use or manufacture." Hughes Aircraft Co. v. United States, 534 F.2d 889, 897-98 (Ct. Cl. 1976).  This Court agrees with the government that Japan Airlines meets the two requirements of § 1498(a).

The reason the United States is not liable is because § 271(g) was enacted after § 1498(a) and as explained in Zoltek, § 1498(a) "did not automatically expand to include the causes of action for patent infringement that were added by Congress after 1918 (such as § 271(g))." Zoltek, 85 Fed Cl. at 417.  The Zoltek court quite logically concludes: "the

12

Add. 13

immunity of government contractors from infringement liability also did not expand, with the result that the immunity of government contractors under § 1498(a) would correspond only with the types of infringement included in § 271(a)." Id.

This Court agrees with the ultimate conclusion in Zoltek that "[a]ccording to its language and purpose, § 1498(a) only insulates government contractors from suit when the Government can be found liable." Id. at 418.

Since it is conceded that the Government has not waived immunity under Section 1498(a), Japan Airlines has no immunity under this provision.

### E.    Japan Airlines's Remaining Arguments

In view of the above discussion, this Court does not address Japan Airlines' final argument that IRIS's claim is barred under the "doctrine of foreign sovereign compulsion."

### CONCLUSION

For the foregoing reasons, the Report and Recommendation, dated January 14, 2008, is hereby adopted as the opinion of the Court. The defendant's motion to dismiss is granted. The Clerk of the Court is directed to enter judgment in accordance with this order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
       September 30, 2009

/s/ Carol B. Amon (electronically signed)

Carol Bagley Amon
United States District Judge

13

Add. 14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------- X

IRIS CORPORATION,

               Plaintiff,

    -against-

JAPAN AIRLINES INTERNATIONAL CO., LTD.,

               Defendant.
-------------------------------------- X

**REPORT AND**
**RECOMMENDATION**

06-CV-6336 (CBA)(KAM)

**MATSUMOTO, United States Magistrate Judge:**

        By order dated June 4, 2007, pursuant to 28 U.S.C. §
636(b), United States District Judge Carol B. Amon referred to
the undersigned for a report and recommendation Japan Airlines
International Co., Ltd.'s ("defendant" or "Japan Airlines")
motion to dismiss IRIS Corporation's ("plaintiff" or "IRIS")
amended complaint of December 12, 2006.  Japan Airlines moves
pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing
that IRIS's allegation of direct infringement of U.S. Patent No.
6,111,506, in violation of 35 U.S.C. § 271(g), fails to state a
claim upon which relief can be granted.  (See Dkt. No. 6, Amended
Complaint ("Am. Compl."), dated 12/12/06.)

        For the reasons set forth below, it is respectfully
recommended that defendant's motion to dismiss be granted.

Add. 15

## I.  BACKGROUND

Plaintiff IRIS filed this action on November 28, 2006, and amended its complaint on December 18, 2006, alleging that Japan Airlines directly infringes U.S. Patent No. 6,111,506 ("the '506 patent") entitled "Method of Making an Improved Security Identification Document Including Contactless Communication Insert Unit." (Am. Compl. ¶ 20.)  IRIS is the assignee of the '506 patent, which was filed on October 14, 1997, and issued on August 29, 2000, naming as inventors two Malaysians: Chas Hock Eng Yap and Foong Mei Chua. (Am. Compl. ¶ 7, Ex. A.)  The inventions of the '506 patent generally relate to "an improved security identification document for use in a wide variety of identification and security systems and a method of making the improved security document." (Am. Compl., Ex. A. cl. 1:10-15.) The '506 patent includes seven method claims[1] (cl. 20:10-64.), including one independent method claim (Claim 1, cl. 20:10-34), and six dependent claims (Claims 2-7, cl. 20:35-64).

Before the court is Japan Airlines's motion to dismiss IRIS's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which

---

[1] The terms "method claims" and "process claims" are synonymous. See State Street Bank & Trust Co. v. Signature Fin. Group, Inc., 149 F.3d 1368, 1372 (Fed. Cir. 1998), cert. denied, 525 U.S. 1093 (1999) ("Furthermore, the Supreme Court's decisions in Diehr, Benson, and Flook, all of which concerned method (i.e., process) claims, have provided and supported the principles which we apply to both machine- and process-type claims.").

-2-

relief can be granted.

IRIS's complaint concerns the allegedly infringing use by defendant of secure electronic passports manufactured using a patented process for making a secure computer identification chip. (Am. Compl. ¶ 8.) According to the complaint, in 1997, Messrs. Yap and Chua "developed a method for manufacturing a secure electronic passport, which, among other things, is a document consisting of a computer chip containing biographical and/or biometric data relating to the particular passport holder." (Id. ¶ 8.) The following year, IRIS began providing the Malaysian government with electronic passports embodying the technology patented in the '506 patent. (Id. ¶ 10.)

An era of heightened global security soon followed and the IRIS technology piqued the interest of various governments, including the United States. (Id. ¶ 11, Ex. B.) Indeed, following the launch of Malaysia's secure passport, Special Agent-in-Charge Neville W. Cramer, of the U.S. Immigration and Naturalization Service ("INS"), wrote on January 14, 2000, to Malaysia's Director General of Immigration to congratulate Malaysia as the first "in the world to use sophisticated high-tech 'chip' technology" in passport production. (Id.) Mr. Cramer also announced that INS had commenced "a program with IRIS Technologies to pilot test" Malaysia's verification system "using 'passport' chip readers at selected U.S. ports of entry." (Id.)

The United States government, according to the
complaint, thereafter determined that it would begin to use
electronic passports, and that, under its Visa Waiver Program,
any foreign national who had previously been able to enter the
United States for tourism or business purposes without a visa
would now be required to use an electronic passport to remain
eligible to participate in the program.[2]  (Id. ¶ 12.)   Japan, a
participating country in the U.S. Visa Waiver Program, formed a
Government Working Group ("Working Group") to evaluate the
introduction of electronic passports.  (Id. ¶¶ 13-14.)  Japan
Airlines allegedly became a member of the Working Group and
helped "the Japanese Government implement workable and
internationally compatible Japanese electronic passports and
electronic passport readers."  (Id. ¶ 14.)  To that end, Japan
Airlines allegedly communicated with IRIS about IRIS's
technological methods and procedures pertaining to electronic
passports, and conducted a study of IRIS's '506 patent.  (Id. ¶
15.)  The Japanese government subsequently began issuing
electronic passports at least as early as March 2006.  (Id. ¶
13.)

---

[2] The U.S. Department of State's website uses the terms
"machine-readable passport," "integrated chip," and "e-Passport"
to describe the electronic passport eligible for the Visa Waiver
Program.  See U.S. Department of State, Visa Waiver Program,
http://travel.state.gov/visa/temp/without/without_1990.html (last
visited Dec. 4, 2007).

-4-

By October 2006, many other nations had introduced electronic passports, including "the United Kingdom, France, Germany, Australia, Ireland, Italy, New Zealand, Spain, Switzerland, Sweden and Portugal." (Id. ¶ 16.) Subsequently, Japan Airlines began "processing and/or boarding" passengers who were issued electronic passports manufactured, according to the methods disclosed and claimed in the '506 patent, at New York City's John F. Kennedy International Airport ("JFK"), and other American Japan Airlines's check-in facilities, thereby "using" a "product" that embodied a patented process as set forth in 35 U.S.C. § 271(g). (Id. ¶¶ 18-19.)

After a pre-motion conference before the undersigned on March 23, 2007, and according to the scheduling order of that same day, Japan Airlines filed the fully briefed motion to dismiss pursuant to Rule 12(b)(6) on June 1, 2007 (dkt. nos. 24-26), which Judge Amon referred to the undersigned on June 4, 2007. Supplemental submissions were made pursuant to the court's order dated December 6, 2007 (dkt. nos. 27-29, 30-31), and the court heard oral argument on December 20, 2007.

Japan Airlines's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) seeks relief on the grounds that: (1) under Title 35 of the United States Code, the terms "product" and "use" in § 271(g) do not encompass the government-owned electronic passports handled by Japan Airlines because

-5-

passports are not "products" and Japan Airlines is nowhere "in
the chain of distribution and supply of passports" (Def.'s MOL at
20-25); (2) United States federal laws requiring Japan Airlines
to examine passports conflict with the patent laws and must thus
be reconciled and harmonized with an exception to infringement
(Def.'s MOL at 6-15); (3) foreign laws and regulations that
require Japan Airlines to examine passports require application
of the "doctrine of foreign sovereign compulsion" and insulate
Japan Airlines from liability under the patent laws (Def.'s MOL
at 16-19); and (4) at least insofar as IRIS's complaint pertains
to United States passports, IRIS's exclusive remedy for
infringement is against the United States government in the Court
of Federal Claims pursuant to 28 U.S.C. § 1498(a) (Def.'s MOL at
2-6).

## II.  DISCUSSION

### A.   Motion To Dismiss Standard

Japan Airlines moves to dismiss in its entirety IRIS's
amended complaint, pursuant to Federal Rule of Civil Procedure
12(b)(6), for failure to state a claim upon which relief can be
granted.  Under the pleading standard set forth in Rule 8(a) of
the Federal Rules of Civil Procedure, complaints must include "a
short and plain statement of the claim showing that the pleader

-6-

Add. 20

is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[A] plaintiff
is required only to give a defendant fair notice of what the
claim is and the grounds upon which it rests." <u>Leibowitz v.
Cornell Univ.</u>, 445 F.3d 586, 591 (2d Cir. 2006).  Rule 8 is
fashioned in the interest of fair and reasonable notice, not
technicality, and therefore is "not meant to impose a great
burden upon a plaintiff." <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S.
336, 347 (2005).

When considering a motion to dismiss under Rule
12(b)(6), a trial court must "accept as true all factual
statements alleged in the complaint and draw all reasonable
inferences in favor of the non-moving party."[3] <u>McCarthy v. Dun &
Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007) (citation
omitted).  "While a complaint attacked by a Rule 12(b)(6) motion
to dismiss does not need detailed factual allegations, a

---

[3] To the extent the parties have submitted materials beyond
the complaint, the court has only considered statutes,
regulations, legislative history, treaties, and dictionaries.
<u>See</u> <u>Allen v. Westpoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir.
1991) ("In determining the adequacy of a claim under Rule
12(b)(6), consideration is limited to facts stated on the face of
the complaint, in documents appended to the complaint or
incorporated in the complaint by reference, and to matters of
which judicial notice may be taken."); <u>Kopec v. Coughlin</u>, 922
F.2d 152, 154 (2d Cir. 1991) ("Rule 12(b) gives district courts
two options when matters outside the pleadings are presented in
response to a 12(b)(6) motion: the court may exclude the
additional material and decide the motion on the complaint alone
or it may convert the motion to one for summary judgment under
Fed. R. Civ. P. 56 and afford all parties the opportunity to
present supporting material.") (citations omitted).

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. ---, 127 S.Ct. 1955, 1964 (2007) (citations, quotations and footnotes omitted).

**B.    Direct Infringement of the '506 Patent under 35 U.S.C. § 271(g)**

On August 23, 1988, Congress passed the Omnibus Trade and Competitiveness Act of 1988 (the "Act"), Public Law No. 100-418, adding subsection (g) to Section 271 of the patent statute.  Bristol-Myers Co. v. Erbamont Inc., 723 F. Supp. 1038, 1041 (D. Del. 1989).  "Prior to the enactment of § 271(g), a process patent holder had a remedy under the patent laws only if the unauthorized use of the [] patented process occurred within the United States."  Pfizer Inc. v. Aceto Corp., 853 F. Supp. 104, 105 (S.D.N.Y. 1994).  As a result, "[a] process patent holder had no remedy against a foreign company that manufactured goods using the patented process and subsequently imported the goods into the United States.  Section 271(g) was enacted to provide such a remedy, in recognition of the fact that '[t]here

-8-

is no logical reason to exclude from the ambit of patent infringement acts associated with the abuse of a United States process <u>as long as they occur within the reach of United States domestic law</u>.'" <u>Id.</u> (quoting H.R. Rep. No. 60, 100th Cong., 1st Sess. 6 (1987)) (emphasis in original). This new subsection, 35 U.S.C. § 271(g), provides that:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent. In an action for infringement of a process patent, no remedy may be granted for infringement on account of the noncommercial use or retail sale of a product unless there is no adequate remedy under this title for infringement on account of the importation or other use, offer to sell, or sale of that product. A product which is made by a patented process will, for purposes of this title, not be considered to be so made after--
>
> (1) it is materially changed by subsequent processes; or
>
> (2) it becomes a trivial and nonessential component of another product.

35 U.S.C. § 271(g).

IRIS's amended complaint alleges that Japan Airlines's inspection of electronic passports at JFK and other Japan Airlines facilities in the United States violates Section 271(g) because, by doing so, Japan Airlines, "without authority," "uses within the United States," passports ("a product"), which are

-9-

Add. 23

"made by a process patented in the United States," namely the '506 patent. Thus, IRIS asserts that Japan Airlines is "liable as an infringer" pursuant to 35 U.S.C. § 271(g).

Japan Airlines responds, <u>inter alia</u>, that IRIS fails to state a claim under § 271(g) because: (1) passports are not "products" as contemplated by § 271(g); and (2) Japan Airlines's examination of passports is not a "use" within the meaning of § 271(g). (Def.'s MOL at 20-25.) The court considers each of these arguments below.

### 1.   **"Product" under 35 U.S.C. § 271(g)**

First, with respect to whether a passport is a "product" within the meaning of § 271(g), Japan Airlines contends that, in enacting § 271(g), Congress intended for the term "product" to encompass only "goods" imported into the United States's commercial marketplace, and that because the accused passports remain the property of the issuing country's government, they do not enter the stream of commerce nor are they "imported" into the United States. (Def.'s MOL at 20-22.) IRIS, on the other hand, posits that the term "product" includes "any tangible, physical good that has been manufactured, irrespective of whether or not it is distributed commercially, marketed, sold, or otherwise injected into the stream of commerce." (Pl.'s Opp'n at 21.)

-10-

The United States Supreme Court has directed that
"[t]he starting point in statutory interpretation is 'the
language [of the statute] itself.'"  <u>United States v. James</u>, 478
U.S. 597, 604 (1986), <u>abrogated on other grounds by</u> <u>Central Green
Co. v. United States</u>, 531 U.S. 425 (2001) (quoting <u>Blue Chip
Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 756, (1975) (Powell,
J., concurring)).  Absent the presence of special circumstances,
when the terms of a statute are unambiguous, judicial inquiry is
complete.  <u>See</u> <u>Burlington N. R.R. Co. v. Oklahoma Tax Comm'n</u>, 481
U.S. 454, 461 (1987); <u>Garcia v. United States</u>, 469 U.S. 70, 75
(1984) ("Notwithstanding petitioners' argument to the contrary,
we are satisfied that the statutory language with which we deal
has a plain and unambiguous meaning.  While we now turn to the
legislative history as an additional tool of analysis, we do so
with the recognition that only the most extraordinary showing of
contrary intentions from those data would justify a limitation on
the 'plain meaning' of the statutory language.  When we find the
terms of a statute unambiguous, judicial inquiry is complete,
except in rare and exceptional circumstances.") (citations and
quotations omitted).

To resolve the current dispute, it is necessary for the
court to determine the meaning of the term "product" as referred
to in § 271(g).  As "[d]ictionaries of the English language
provide the ordinary meaning of words used in statutes," <u>Bayer AG</u>

-11-

v. Housey Pharms., Inc., 340 F.3d 1367, 1371-72 (Fed. Cir. 2003),
Japan Airlines relies on Black's Law Dictionary, which defines
"product" as "Something that is distributed commercially for use
or consumption and that is usu[ally] (1) tangible personal
property, (2) the result of fabrication or processing, and (3) an
item that has passed through a chain of commercial distribution
before ultimate use or consumption." Black's Law Dictionary (8th
ed. 2004); see also The Oxford English Dictionary, 2d Vol. XII
(1989)("That which is produced by an action, operation, or work;
a production; the result. Now freq[uently] that which is
produced commercially for sale."). Japan Airlines relies on these
definitions, of course, because passports, at least insofar as
their end users are concerned, are not customarily produced or
distributed commercially for sale.[4]

In opposition to Japan Airlines's arguments, IRIS notes
that the Random House Webster's Unabridged Dictionary (2d ed.
2001) — a source relied upon by the Federal Circuit in Bayer AG,
340 F.3d at 1371-72 — states that a "product" is simply a "thing
produced by labor," or alternatively, a "thing produced by or
resulting from a process." Similarly, according to Webster's New

_____

[4] The court notes that passports are not entirely outside
the bounds of commerce. Passports also play a crucial role in
the ability of commercial airline carriers and other
transportation providers to transport individual passengers
between countries. Thus, this court cannot conclude that
passports do not play any role in the stream of commerce.

-12-

Add. 26

Int'l Dictionary (Unabridged) (3rd ed. 1969), a "product" is
"something produced by physical labor or intellectual effort."
These broader definitions comport with the etymology of the word
"product," which is derived from the 15th century Latin word
productum, meaning "something produced."  Merriam-Webster's
Online Dictionary, http://www.webster.com/dictionary/product
(last visited Dec. 4, 2007); cf. Zicherman v. Korean Air Lines
Co., 516 U.S. 217, 222 (1996) (rejecting the natural and ordinary
meaning of "damage" when it would produce over-broad and
nonsensical results); Jarecki v. G.D. Searle & Co., 367 U.S. 303,
307-09 (1961) (adopting a more technical interpretation of the
word "discovery" because of its over-broad ordinary meaning).
Thus, under this ordinary, albeit more expansive, definition of
"product," passports, which are the tangible result of a
manufacturing process involving labor, are "products."

          This broader definition appears consistent with the way
in which the Federal Circuit has interpreted the term "product,"
at least insofar as the court finds no precedent in which the
Federal Circuit has included a commercial component in the term
"product," as used in Section 271(g).  For instance, in Bayer AG,
the Federal Circuit acknowledged that the term "product" in §
271(g) is ambiguous, in considering whether research data that
derived from the performance of a method to identify a substance
was "a product which is made by a process."  Id. at 1370.  The

-13-

court held that "in order for a product to have been 'made by a
process patented in the United States' it must have been a
physical article that was 'manufactured.'" Id. at 1377.

        Similarly, in NTP, Inc. v. Research in Motion, LTD.,
418 F.3d 1282 (Fed. Cir. 2005), cert. denied, 546 U.S. 1157
(2006), the Federal Circuit held that plaintiff had no cause of
action under § 271(g) because "the transmission of information"
"does not entail the manufacturing of a physical product." Id.
at 1323. Thus, the term "product," as interpreted by the Federal
Circuit in Bayer AG and Research in Motion, and commensurate with
general dictionary definitions, refers to a physical article that
was manufactured, such as passports.

        In further support of its contention that the term
"product" contains an additional commercial limitation, Japan
Airlines urges the court to examine the legislative intent of the
statute, as the Federal Circuit did in Bayer AG. 340 F.3d at
1371-75. The Supreme Court has stated that "[i]n the absence of
a 'clearly expressed legislative intention to the contrary,' the
language of the statute itself 'must ordinarily be regarded as
conclusive.'" James, 478 U.S. at 606 (quoting Consumer Prod.
Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)).
Japan Airlines points to portions of the legislative history of
Section 271(g) in support of its argument that the term "product"
as used in Section 271(g) includes only those "products" that

-14-

have entered the stream of commerce.   (Def.'s MOL at 20-21.)

That legislative history, however, reveals the Congressional

recognition that Section 271(g) was intended to provide a remedy

by making unlawful the importation of a product made through use

of an American process patent.  <u>See generally</u> H.R. Rep. No. 60,

100th Cong., 1st Sess. 6 (1987).

Had Congress intended the term "product" to have a

narrower, specialized meaning such that physical items that never

enter the stream of commerce in the United States are not the

subject of infringement liability, it could have done so by

placing the adjective "commercial" in the text of § 271(g), as it

has in other subsections.  <u>See, e.g.</u>, 15 U.S.C. § 271(a)(1)-(3)

("Improvements in manufacturing and product technology depend on

fundamental scientific and engineering research to develop . . .

(B) new technological processes by which such improved methods

may be used in practice to improve manufacturing and to assist

industry to transfer important laboratory discoveries into

<u>commercial products</u>.") (emphasis added); 15 U.S.C. § 521 ("The

term 'aquatic products' includes all <u>commercial products</u> of

aquatic life in both fresh and salt water.") (emphasis added); 7

U.S.C. § 2702 ("The term 'products of spent fowl' means

<u>commercial products</u> produced from spent fowl.") (emphasis added).

For this court to read a commercial requirement into the term

"product" as used in Section 271(g) would render redundant

-15-

Congress's use of the adjective "commercial" to modify the term "product" in the preceding citations.

Indeed, the fact that Congress included the following sentence within Section 271(g) demonstrates that Congress contemplated when commerciality should be considered in subsection 271(g): "In an action for infringement of a process patent, no remedy may be granted for infringement on account of the <u>noncommercial use</u> or retail sale <u>of a product</u> unless there is no adequate remedy under this title for infringement on account of the importation or other use, offer to sell, or sale of that product."[5]  35 U.S.C. § 271(g) (emphasis added).  Clearly, Congress could have further limited Section 271(g)'s scope to only commercial products by inserting the modifying word "commercial" before the word "product" rather than relying on the foregoing, conditional, noncommercial exclusion.  "To argue otherwise is to tag Congress with an extravagant preference for the opaque when the use of a clear adjective or noun would have worked nicely."  <u>Gutierrez v. Ada</u>, 528 U.S. 250, 256 (2000).

Similarly, Congress could have provided an explicit and narrow definition of the term "product," as used in § 271(g), as

_____

[5] On December 6, 2007, the court ordered additional briefing addressing the effect, if any, of this provision on the parties' respective positions regarding Japan Airline's instant motion to dismiss.  The court agrees with the parties' submissions that the language has no effect on the issues presented by defendant's motion.  (<u>See generally</u> Dkt. Nos. 27-31.)

-16-

it has done in other contexts within the patent statute.  Title

35 U.S.C. § 156(f), for example, defines the term "product" for

the purposes of that section as "A drug product" or "Any medical

device, food additive, or color additive subject to regulation

under the Federal Food, Drug, and Cosmetic Act."  See Glaxo

Operations UK Ltd. v. Quigg, 894 F.2d 392, 399 (Fed. Cir. 1990)

(noting that Congress's "explicit and precise" definition of

"product" in § 156(f)(2) indicated that "Congress specifically

selected terms with narrow meanings that it chose from among many

alternatives").

        Finally, with respect to Japan Airlines's argument that

passports cannot be "products" because their true owners are

their issuing governments, the court is unaware of any legal

authority for the proposition that ownership determines whether

an item is a "product."  Nor does the statute provide that

ownership of a product should determine whether a user of that

product is liable as an infringer under 35 U.S.C. § 271(g).  Cf.

Trs. of Columbia Univ. v. Roche Diagnostics GMBH, 272 F. Supp. 2d

90, 108 (D. Mass. 2002) ("[I]t is irrelevant under Section 271(g)

who manufactured the goods so long as the goods were manufactured

using a patented process.  Instead, under the statute, liability

attaches to one who, without authority, imports a product made by

a patented process into the United States.  The defendant need

not have performed the patented process itself.") (emphasis in

-17-

original).  The court notes that "ownership" is explicitly
addressed in other sections of the patent laws.  <u>See, e.g.</u>, 35
U.S.C. § 281 ("A patentee shall have remedy by civil action for
infringement of his patent."); <u>Ortho Pharm. Corp. v. Genetics</u>
<u>Inst., Inc.</u>, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995), <u>cert.</u>
<u>denied</u>, 516 U.S. 907 (1995); <u>Beech Aircraft Corp. v. EDO Corp.</u>,
990 F.2d 1237, 1248 (Fed. Cir. 1993); Manual of Patent
Examination and Procedure § 301 (8th ed. 2007) ("Ownership of a
patent gives the patent owner the right to exclude others from
making, using, offering for sale, selling, or importing into the
United States the invention claimed in the patent." (citing 35
U.S.C. § 154(a)(1))).

Thus, IRIS's complaint has sufficiently alleged that
passports are products within the meaning of 35 U.S.C. § 271(g).
Accordingly, Japan Airlines's motion to dismiss should be denied
on this ground.

### 2.  <u>"Use" under 35 U.S.C. § 271(g)</u>

Further, Japan Airlines argues that it is not subject
to patent infringement liability under § 271(g) because
"examination" of a passport is not a "use" as contemplated by the
statute.  This argument also fails because it ignores the
ordinary meaning of the term "use."

Nearly a century ago, the Supreme Court touched on the

-18-

issue of use in the context of the patent laws in <u>Bauer & Cie v.</u>
<u>O'Donnell</u>, 229 U.S. 1 (1913).  According to Justice Day:

> In framing the act and defining the extent of
> the rights and privileges secured to a
> patentee, Congress did not use technical or
> occult phrases, but in simple terms gave an
> inventor the exclusive right to . . . use . .
> . his invention for a definite term of years.
> . . . The right to use is a comprehensive
> term and embraces within its meaning the
> right to put into service any given
> invention. . . . An inventor has not only
> the exclusive right to make and vend his
> invention or discovery, but he has the like
> right to use it; and when a case comes fairly
> within the grant of the right to use, that
> use should be protected by all means properly
> within the scope of the statute.

<u>Id.</u> at 10-11, 14.

The Federal Circuit also interprets the term "use"
broadly.  In <u>Research in Motion</u>, the Federal Circuit noted, for
example, that: "The ordinary meaning of 'use' is to 'put into
action or service.'  <u>Webster's Third New Int'l Dictionary</u> 2523
(1993).  The few court decisions that address the meaning of
'use' have consistently followed the Supreme Court's lead in
giving the term a broad interpretation."  418 F.3d at 1317
(citing <u>Roche Prods., Inc. v. Bolar Pharm. Co.</u>, 733 F.2d 858, 863
(Fed. Cir. 1984), <u>superseded in part by</u> 35 U.S.C. § 271(e)
(holding that testing is a "use")).

Although courts evaluating patent claims generally
interpret the word "use" broadly, district courts have concluded
that the term does not include activities tangentially involving

-19-

the accused product.  See, e.g., L.A. Gear, Inc. v. E.S.
Originals, Inc., 859 F. Supp. 1294 (C.D. Cal. 1994).  For
example, merely observing an allegedly infringing product,
demonstrating a device, or observing a demonstration of a device,
does not constitute a "use" of that product.  Id.  Similarly, at
least one court has held that the mere displaying of a patented
item for advertising may not technically constitute a "use."
Quantum Corp. v. Sony Corp., 16 USPQ2d. 1447, 1450 (N.D. Cal.
1990); cf. Olsson v. United States, 25 F. Supp. 495, 498 (Ct. Cl.
1938), cert. denied, 307 U.S. 621 (1939) (possession and
maintenance of disassembled guns was infringing use although they
were merely "available for their normal and intended use for
national defense"); Donnely Corp. v. Reitter & Schefenacker GmbH
& Co., 189 F. Supp. 2d 696, 704-05 (W.D. Mich. 2002) (the display
of an infringing product in a sales meeting where the purpose was
to generate interest in the infringing product constituted
infringing use).

     Based on the foregoing, while it is clear that the term
"use" does not touch on all conceivable activity that could occur
with a passport, the court can think of no more apt "use" than
that for which a passport is designed: to facilitate the
identification of its bearer.  Indeed, in support of its foreign
sovereign compulsion defense, addressed infra, Japan Airlines
itself asserts that passports are "used" by the United States to

Add. 34

identify their bearer, to provide evidence that the sovereign has
authorized its citizens to travel to a foreign country and return
to their home country, and to request that other foreign
sovereigns allow the bearer to enter and pass freely and safely.
(Def.'s MOL at 4.)   IRIS's complaint thus adequately alleges that
the inspection of passports by Japan Airlines in its boarding
process constitutes a "use" within the meaning of 35 U.S.C. §
271(g).  Accordingly, Japan Airlines's argument that examination
of passports does not constitute a "use" under § 271(g) is
without merit.

## C.    Conflicts of Laws, Regulations, and Treaty

Japan Airlines's motion to dismiss IRIS's complaint is
further predicated on the argument that the court must reconcile
a conflict between the alleged § 271(g) infringement of the '506
patent and various federal statutes, regulations and one
international treaty.  Japan Airlines contends that because the
Enhanced Border Security and Visa Entry Reform Act of 2002
("Enhanced Border Security Act"), 8 U.S.C. §§ 1221, et seq.,
federal regulations, 19 C.F.R. § 122.75a, and the Convention on
International Civil Aviation, Dec. 7, 1944, 61 Stat. 1180, 15
U.N.T.S. 295 ("the Chicago Convention"), require airlines to
provide United States border officials with passenger, crew and
occupant information, including but not limited to passport

-21-

Add. 35

number and country of issuance, before flights depart from or enter the United States, based upon the airlines's inspection of the passports of passengers and crew members, a conflict exists between the Enhanced Border Security Act, 8 U.S.C. § 1221, et seq., federal regulations, and the Chicago Convention, and patent infringement liability under 35 U.S.C. § 271(g). (Def.'s MOL at § II.)  Japan Airlines thus urges the court to reconcile this conflict by determining that the interests propounded under the passport inspection and reporting requirements — national security — outweigh the underlying interest of § 271(g) of the patent statute - "to protect United States process patentholders against the infringements of foreign manufacturers who avoid liability by applying the process in other countries and selling [or using] the subject goods in the United States." Allegheny Ludlum Corp. v. Nippon Steel Corp., 765 F. Supp. 224, 226 (E.D. Pa. 1991).

Notably, IRIS does not dispute for the purposes of this motion that Japan Airlines must comply with federal and international legal and regulatory obligations to inspect the identification documents of passengers, crew members and other occupants.  Nor does IRIS dispute that Japan Airlines must "use" the passports of its passengers and crew to obtain and report necessary information, including the passport number and issuing country.  Rather, IRIS contends that Japan Airlines has failed to

-22-

Add. 36

demonstrate that it nevertheless is exempted from patent infringement liability. (Pl.'s Opp'n at 11.)

As discussed above, pursuant to 35 U.S.C. § 271(g), passports are "products," and Japan Airlines's handling of those passports during the fulfillment of its mandated inspection is a "use" that invokes potential infringement liability under § 271(g). The court is thus clearly faced with a conflict of laws that requires reconciliation.

Japan Airlines relies substantially on a single Second Circuit case — SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21 (2d Cir. 2000), cert. denied, 531 U.S. 872 (2000) — for instruction[6] on how this court should resolve the conflict between the Enhanced Border Security Act and § 271(g). In SmithKline, the Second Circuit was "faced with a conflict between two statutes," the Hatch-Waxman Amendments, which "require generic drug producers to use labeling that will infringe upon copyrights in labels of pioneer drugs," and the Copyright Act, which "seems to prohibit such copying." Id. at 23, 27-28 (citing 21 C.F.R. § 314.127(a)(7) ("FDA will refuse to

_____

[6] Although the holding in SmithKline is not controlling in this case, see 28 U.S.C. § 1295 (proving that the Federal Circuit possesses appellate jurisdiction in cases where, as here, the district court's jurisdiction is based on 28 U.S.C. § 1338(a)), the court believes that the facts are sufficiently analogous to the instant case to inform the court's determination herein.

approve [a generic drug⁷ application unless] the labeling
proposed for the drug is the same as the labeling approved for
the [previously approved] listed drug")). The court reasoned
that "if SmithKline's copyright claim has merit, then [the
defendant] cannot realistically use the [generic drug
application] process . . . because it will have to change the
label and lose FDA approval or be enjoined from using a label
that infringes SmithKline's copyright." Id. at 27.

        Faced with this conflict, the SmithKline court looked
to the primary purpose of each statute and reconciled the two by
holding that the Copyright Act should give way to the Hatch-
Waxman Amendments because a remedy for copyright infringement in
that context "would severely undermine the Hatch-Waxman
Amendments," whereas the same could not be said for the reverse
scenario. Id. at 29.

        Here, it is undisputed that Japan Airlines is required
by federal law to examine the passports of departing passengers
at JFK Airport and other American airports during its boarding
process and transmit that information to the United States
government pursuant, inter alia, to 8 U.S.C. § 1221. In fact, §
1221(b)-(c) specifically states that:

---

    ⁷ "Generic drugs are identical to pioneer drugs that have
previously obtained FDA approval; they can be marketed once the
pioneer drug's patent protection and FFDCA [Federal Food, Drug,
and Cosmetic Act] exclusivity periods expire." SmithKline, 211
F.3d at 26.

> For each commercial vessel or aircraft taking
> passengers on board at any seaport or airport
> of the United States, who are destined to any
> place outside the United States, it shall be
> the duty of [the master or commanding
> officer, or authorized agent, owner, or
> consignee, of the commercial vessel or
> aircraft concerned] to provide any United
> States border officer . . . before departure
> from such port manifest information about
> each passenger, crew member, and other
> occupant to be transported . . . . The
> information to be provided with respect to
> each person listed on the manifest . . .
> shall include- (1) complete name; (2) date of
> birth; (3) citizenship; (4) sex; (5) passport
> number and country of issuance; (6) country
> of residence; (7) United States visa number,
> date, and place of issuance . . . .

8 U.S.C. § 1221(b)-(c).

The requirement to provide a passenger manifest is not optional. Rather, the commercial carrier is not "granted clearance papers until the appropriate official . . . has complied with the requirements." 8 U.S.C. § 1221(f). Refusal or failure to provide the manifest information, or furnishing inaccurate information, is subject to fines of $1,000 per person with respect to each instance of inaccurate or incomplete information. 8 U.S.C. § 1221(g).

Assuming, arguendo, that IRIS's patent infringement claim has merit, Japan Airlines, like the defendant in SmithKline, cannot operate its commercial airline within the United States and comply with the Enhanced Border Security Act, without infringing IRIS's '506 patent under 35 U.S.C. § 271(g).

-25-

Add. 39

This court therefore reconciles the two statutes by "adopt[ing] the interpretation that preserves the principles of each." <u>SmithKline</u>, 211 F.3d at 27-28 (citing <u>Zenith Elecs. Corp. v. Exzec, Inc.</u>, 182 F.3d 1340, 1347 (Fed. Cir. 1999) ("Unless Congress clearly indicates which of two statutes is to prevail in event of conflict, our responsibility is to interpret and apply them in a way that preserves the purpose of both and fosters harmony between them.") (internal quotations and citations omitted)).

Here, the competing policy interests are national security, on the one hand, and the protection of United States process patent holders from the importation, use, sale or offer to sell, in the United States, products manufactured abroad using processes protected by United States granted patent rights. The interest in our nation's security outweighs IRIS's general commercial interests in its patent under 35 U.S.C. § 271(g). <u>See</u> <u>Franklin v. Massachusetts</u>, 505 U.S. 788, 818 (1992) (recognizing "the principle of judicial deference that pervades the area of national security").

Although the facts presented in the instant case are not entirely analogous to <u>SmithKline</u>, the court recommends the same result. For example, a significant factor underlying the Second Circuit's opinion in <u>SmithKline</u>, which is less prominent here, was that the statutory purpose of the copyright law — "to

-26-

encourage the production of creative works by according authors a
property right in their works" — was not eviscerated by the
excused infringement because the copyright holder gained
financially from the sale of the corresponding pioneer drug, and
thus mandatory infringement of the copyrighted label did not
stifle creativity because there was still an incentive to reap
profits from new drugs and thus a congruent need to create new
labels.  See SmithKline, 211 F.3d at 29; see also Timely Prods.
Corp. v. Arron, 523 F.2d 288, 297-98 (2d Cir. 1975) (noting that
a patent's only value is "the right to exclude others from the
use of the invention during the patent term").

        The court notes that if infringement is permitted
without recourse for compensatory damages, the incentive to
create is understandably diminished, and, consequently, the broad
purpose of the patent laws — "to promote the progress of science"
— is hindered.  U.S. Const. § 8, Art. I; see Bonito Boats, Inc.
v. Thunder Craft Boats, Inc., 489 U.S. 141, 150-51 (1989) ("The
federal patent system thus embodies a carefully crafted bargain
for encouraging the creation and disclosure of new, useful, and
nonobvious advances in technology and design in return for the
exclusive right to practice the invention for a period of
years.").  IRIS's amended complaint, however, does not allege
that plaintiff was not compensated for manufacturing or licensing
the '506 patent in connection with the manufacturing of

electronic passports at the request of the United States and
other nations, including Malaysia, Japan, the United Kingdom,
France, Germany, Australia, Ireland, Italy, New Zealand, Spain,
Switzerland, Sweden and Portugal.  (See Am. Compl. ¶¶ 10-13, 16,
19.)  In this context, the national security interests embodied
in the mandate of Enhanced Border Security Act, 8 U.S.C. §§ 1221,
et seq., override the patent holder's remedies embodied in 35
U.S.C. § 271(g), the principle purpose of which is to protect
process patent holders from economic loss resulting from the
practice of the patented process abroad, where the products of
that patented process later enter the United States.  See
generally H.R. Rep. No. 60, 100th  Cong., 1st Sess. 6 (1987).

        Furthermore, as the Second Circuit noted in SmithKline,
"[i]n addition to looking to conflicting statutes' principle
purposes, courts have traditionally given weight to statutes'
priority of enactment and specificity in reconciling conflicts."
211 F.3d at 28 n.3 (citing FDA v. Brown & Williamson Tobacco
Corp, 529 U.S. 120, 143 (2000) ("The classic judicial task of
reconciling many laws enacted over time, and getting them to
'make sense' in combination, necessarily assumes that the
implications of a statute may be altered by the implications of a
later statute.  This is particularly so where the subsequent
statutes more specifically address the topic at hand. . . . [A]
specific policy embodied in a later federal statute should

-28-

Add. 42

control our construction of the earlier statute, even though it

has not been expressly amended")(internal citations and quotation

marks omitted)).  Here, Congress enacted the Enhanced Border

Security Act in 2002, shortly after the terrorist attacks on our

country in September of 2001.  On the other hand, Congress added

§ 271(g) to Title 35 of the United States Code in 1988, fourteen

years earlier.  The relative temporal nature of these two

statutes also favors the interpretation that Japan Airlines

should not be held liable for patent infringement of the '506

patent for complying with the later enacted Enhanced Border

Security Act.

        The court would not reach this same conclusion if it

were considering defendant's motion only under the U.S. Visa

Waiver Program, rather than the Enhanced Border Security Act.

See, e.g., 8 U.S.C. §§ 1187, 1732 (requiring countries to convert

to electronic passports to maintain for its citizens the

privilege of entering the United States without applying for a

visa from abroad).  Japan Airlines has not demonstrated that the

Visa Waiver Program requires Japan Airlines to use exclusively

electronic passports embodying the technology of the '506 patent.

See FMC Corp. v. Control Solutions, Inc., 369 F. Supp. 2d 539,

568 (E.D. Pa. 2005) (distinguishing SmithKline on the grounds

that "the plain wording of the EPA labeling statutes and

regulations [at issue in FMC Corp.] do not mandate copying, but

-29-

Add. 43

rather suggest generic companies draft their own language.").
Japan Airlines does not assert, for example, that citizens of
those participating countries <u>must</u> carry electronic passports to
enter the United States.  Instead, international travelers need
only possess an electronic passport to take advantage of the
less-burdensome entry requirements of the Visa Waiver Program.
<u>See</u> 8 U.S.C. § 1732(c)(2) ("On and after October 26, 2005, any
alien applying for admission under the visa waiver program under
section 1187 of this title shall present a passport that meets
the requirements of paragraph (1) unless the alien's passport was
issued prior to that date.")  Therefore, the U.S. Visa Waiver
program does not provide a sufficient basis to dismiss the
amended complaint.

        Based on the conflict between the Enhanced Border
Security Act and 35 U.S.C. § 271(g), the court respectfully
recommends that IRIS's amended complaint be dismissed for failure
to state a claim upon which relief can be granted pursuant to
Fed. R. Civ. P. 12(b)(6).[8]


**D.    <u>Doctrine of Foreign Sovereign Compulsion</u>**

        Japan Airlines further seeks to dismiss IRIS's patent
infringement allegations by invoking the defense of "foreign

---

        [8] The court does not proceed to determine whether the cited
federal regulations, or the Chicago Convention, dictate the same
result.

sovereign compulsion." (Def.'s MOL at 16-19.) Defendant argues
that this judicially-created doctrine exempts Japan Airlines from
liability under the patent laws because Japan Airlines is
compelled by foreign governments, namely Japan and Brazil,[9] to
inspect passports in the United States in the passenger-boarding
process and that "it is unfair to impose liability on a private
party that is compelled to act by a foreign sovereign under
threat of penalties." (Def.'s MOL at 16.) Japan Airlines
further states that "notions of sovereignty, comity and foreign
relations" shield it from liability for patent infringement.
(Id.)

        Although IRIS concedes for the purposes of this motion
that foreign laws and/or regulations require Japan Airlines to
examine passports in the course of its commercial operations,
IRIS argues that the doctrine of foreign sovereign compulsion
does not apply to circumstances involving patent infringement.
Indeed, if this court were to apply the doctrine of foreign
sovereign compulsion to the facts of this case, it would be the

---

        [9] As a practical matter, under an air travel agreement
between the United States and Japan, all of Japan Airlines's
flights that depart from the United States travel either to Japan
or Brazil, and Japan Airlines, pursuant to Japanese and Brazilian
laws and regulations, inspects on American soil the passports of
passengers bound for those destinations. See Chpt. 6, Art. 56-2,
Japanese Immigration Control and Refugee Act (Gov't Order No.
319, Oct. 4, 1951) (certified translation provided at Def.'s MOL,
App. Tab 4); Brazilian Public Law No. 6.815 (Aug. 19, 1980)
(certified translation provided at Def.'s MOL, App. Tab 5);
(Def.'s MOL at 16-19.)

first instance of which this court is aware that the foreign

sovereign compulsion defense was applied beyond the realms of

antitrust and discovery violations, to an action for patent

infringement.  The court thus proceeds with deliberate caution in

analyzing whether the defense should apply here.

        After considering the cases upon which Japan Airlines

relies, including McElderry v. Cathay Pac. Airways, Ltd., 678 F.

Supp. 1071 (S.D.N.Y. 1988) and Interamerican Ref. Co. v. Texaco

Marabaibo, Inc., 307 F. Supp. 1291 (D. Del. 1970), the court

declines to decide whether those cases provide sufficient grounds

to justify extending the foreign sovereign compulsion doctrine to

the facts presented in this case.  Given that the court has

already determined that the action should be dismissed because

federal law mandates Japan Airlines's use of the patented

product, the court need not proceed with the foreign sovereign

compulsion doctrine analysis, and need not decide whether to

extend the doctrine to patent infringement cases.  See

SmithKline, 211 F.3d at 25 ("[W]e see little need for further

examination of [the fair use or implied license defenses].  If

either were to prevail, some new law, essentially judge-made,

would have to be fashioned.  In our view, the case can more

easily be disposed of on the straightforward ground that the

Hatch-Waxman Amendments to the FFDCA not only permit but require

producers of generic drugs to use the same labeling as was

-32-

Add. 46

approved for, and is used in, the sale of the pioneer drug, even

if that label has been copyrighted. . . .  SmithKline's copyright

claim is therefore meritless, and we need not address either the

fair use or implied license defenses.").  Thus the court declines

to examine Japan Airlines's arguments for dismissal on the ground

of foreign sovereign compulsion.

**E.    28 U.S.C. § 1498(a) Remedy for U.S. Passports**

Finally, Japan Airlines contends that IRIS's exclusive

remedy for the alleged infringement of electronic passports

issued by the United States government is against the United

States government.  (Def.'s MOL at 2-6.)  According to Japan

Airlines's reasoning, when, as here, "an invention covered by a

U.S. patent is used or manufactured by or for the United States,

the sole and exclusive remedy for the patent owner is against the

United States government" in the Court of Federal Claims pursuant

to 28 U.S.C. § 1498(a).  (Id. at 2-3.)

Although the federal government is protected from any

legal action by sovereign immunity, see United States v.

Sherwood, 312 U.S. 584, 586 (1941) ("[t]he United States, as

sovereign, is immune from suit save as it consents to be sued"),

sovereign immunity protection can be waived and conditioned by

Congress.  See United States v. Nordic Village Inc., 503 U.S. 30,

34 (1992) (stating that the government's consent to be sued must

-33-

be strictly construed in favor of the sovereign and not enlarged beyond what the language requires).  One such waiver exists in patent infringement cases.

A patentee's legal recourse against the federal government for patent infringement is set forth and limited by the terms of 28 U.S.C. § 1498.  Section 1498(a) provides, in pertinent part, that:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

Id. (emphasis added).

Plaintiff disputes that § 1498(a) provides Japan Airlines with an affirmative defense because it does not apply to § 271(g) claims, but only to § 271(a) claims.  As the court has already recommended that Japan Airlines's motion to dismiss pursuant to Rule 12(b)(6) be granted, see supra § C, the court need not decide whether 28 U.S.C. § 1498(a) provides the exclusive remedy for plaintiff's infringement claims vis-a-vis United States passports.

-34-

Add. 48

### III.  CONCLUSION

For the foregoing reasons, the court respectfully recommends that defendant's motion to dismiss IRIS's amended complaint be granted.  Any objections to this Report and Recommendation must be filed with United States District Judge Carol B. Amon within ten days of the date of its entry.  Failure to object within ten days of the date of entry will preclude appellate review by the District Court.  See 28 U.S.C. § 636(b)(1); Local Civil Rule 6.3; Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989).  Any requests for extensions of time to file objections should be made to Judge Amon.


**SO ORDERED.**
Dated: January 14, 2008
      Brooklyn, New York

                                    _____/s/_____
                                    **Kiyo A. Matsumoto**
                                    United States Magistrate Judge
                                    Eastern District of New York

-35-

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 23rd day of December, 2009, two bound copies of the Brief of Appellant were served via UPS Ground Transportation to the following:

> William Karas
> Charles Schill
> Carol Gosain
> Paul Lall
> STEPTOE & JOHNSON, LLP
> 1330 Connecticut Avenue, N.W.
> Washington, D.C. 20036
> (202) 429-8162
>
> *Counsel for Appellee*

I further certify that on this 23rd day of December, 2009, the required number of copies of the Brief of Appellant were hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit.

The necessary filing and service were performed in accordance with the instructions given me by counsel in this case.

Teodora Mihaylova

THE LEX GROUP<sup>DC</sup>
1750 K Street, N.W., Suite 475
Washington, DC 20006
(202) 955-0001

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Circuit Rule 28(a)(14) and Federal Rule of Appellate Procedure 32(a)(7)(C), counsel for Appellant hereby certifies that the foregoing Brief of Appellant complies with the type-volume limitation proscribed in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) and was prepared using the following:

Microsoft Word 2000;

Times New Roman;

14 point typeface.

Appellant's counsel has relied on the word count function of the word-processing program used to prepare this Brief of Appellant, which indicates that this brief contains _3,733_ words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

Respectfully Submitted,

Stephen N. Weiss
Gregory J. Fleesler
Moses & Singer LLP
405 Lexington Avenue
New York, New York 10174
(212) 554-7800

*Counsel for Appellant*