IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

————————————

IRIS CORPORATION,

Plaintiff-Appellant,

v.

JAPAN AIRLINES INTERNATIONAL CO. LTD,

Defendant-Appellee.

AND

JAPAN AIRLINES CORPORATION,

Defendant.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
No. 06-cv-06336 (HON. CAROL BAGLEY AMON)

————————————

**BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE***

————————————

STUART F. DELERY
*Assistant Attorney General*

SCOTT R. McINTOSH
(202) 514-4052
ANISHA S. DASGUPTA
(202) 514-5428
*Attorneys, Appellate Staff*
*Civil Division, Room 7533*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530*

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST...................................................................1

QUESTIONS PRESENTED...................................................................1

STATEMENT OF THE CASE...................................................................2

SUMMARY OF ARGUMENT...................................................................4

ARGUMENT...................................................................6

I.    28 U.S.C. § 1498(a) IMMUNIZES JAPAN AIRLINES FROM
INFRINGEMENT LIABILITY FOR COMPLYING WITH
FEDERAL REQUIREMENTS TO INSPECT PASSENGER
PASSPORTS...................................................................6

    A.    Section 1498(a) Provides the Exclusive Remedy
When a Patented Invention Is Used for the Government
and with the Government's Authorization or Consent.............................7

    B.    Section 1498(a) Encompasses Claims of Patent
Infringement under Section 271(g) ...................................................................9

    C.    JAL's Passport Inspections Are "For" the United States
and with Its "Authorization and Consent" Within the Meaning
of Section 1498(a) ...................................................................11

II.    SECTION 271(g) DOES NOT CONFLICT WITH THE
ENHANCED BORDER SECURITY ACT...................................................................14

CONCLUSION ...................................................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page**

*Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis,*
   583 F.3d 1371 (Fed. Cir. 2009) .......................................................................12

*Richmond Screw Anchor Co. v. United States,*
   275 U.S. 331 (1928) ......................................................................................... 8

*SmithKline Beecham Consumer Healthcare v. Watson Pharmaceuticals,*
   211 F.3d 21 (2d Cir. 2000) ..........................................6, 14, 15, 16, 17, 18

*TVI Energy Corp v. Blane,*
   806 F.2d 1057 (Fed. Cir. 1986) ................................................................ 12, 13

*Zoltek Corp. v. United States,*
   442 F.3d 1345 (Fed. Cir. 2006) ...........................................................5, 9, 10

*Zoltek Corp. v. United States,*
   672 F.3d 1309 (Fed. Cir. 2012) (en banc) ............................................... 5, 7

**Statutes:**

8 U.S.C. § 1221, et seq. ..................................................................................3

8 U.S.C. § 1221(a) ................................................................................3, 11, 15

8 U.S.C. § 1221(b)...............................................................................3, 11, 15

8 U.S.C. § 1221(c) ...............................................................................3, 11, 15

8 U.S.C. § 1221(c)(10) ...................................................................................11

8 U.S.C. § 1221(d)...........................................................................................3

21 U.S.C. § 355(j)(2)(A)(v) .............................................................................16

28 U.S.C. § 517................................................................................................1

28 U.S.C. § 1498(a) ................................. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 19

35 U.S.C. § 271(a) ................................................................................... 5, 10

35 U.S.C. § 271(g) ............................... 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 17

Act of June 25, 1910
    Pub. L. No. 61-305, 36 Stat. 851 ............................................. 7

Act of July 1, 1918,
    Pub. L. No. 65-182, 40 Stat. 704 ........................................... 8

Act of October 31, 1942,
    Pub. L. No. 77-768, 56 Stat. 1013 ......................................... 8

Enhanced Border Security Act,
    Pub. L. No. 107-173, 116 Stat. 54 (2002) ............................. 1, 3

**Regulations:**

19 C.F.R. § 122.75a(d) ............................................... 3, 5, 12, 13, 15

**Rules:**

Fed. R. App. P. 29 ................................................................................. 1

## STATEMENT OF INTEREST

The United States submits this brief as *amicus curiae*, pursuant to 28 U.S.C. § 517 and Rule 29 of the Federal Rules of Appellate Procedure. To promote the border security of the United States, the federal government requires airlines to examine the passports of persons arriving into and departing from the United States. The United States has an interest in ensuring that airlines can carry out this important function without the disruptions that would occur if inspecting passports exposed airlines to the liability and remedies available under Title 35 of the United States Code. The United States also has an interest in ensuring the proper application of 28 U.S.C. § 1498(a), which protects important federal interests by providing the exclusive remedy for patent infringement when a patented invention is used for the United States and with the United States' authorization or consent.

## QUESTIONS PRESENTED

1.  Whether 28 U.S.C. § 1498(a) immunizes an airline sued for patent infringement under 35 U.S.C. § 271(g) for complying with federal requirements to inspect passports of passengers arriving in and departing from the United States.

2.  Whether 35 U.S.C. § 271(g) is implicitly superseded by Section 402(a) of the Enhanced Border Security Act, Pub. L. No. 107-173, to the extent that § 271(g) would otherwise apply to the inspection of passenger passports.

## STATEMENT OF THE CASE

IRIS Corporation is the assignee of a United States patent covering a method for manufacturing electronic passports.  *See* A3.[1]  IRIS brought this suit against Japan Airlines ("JAL") under 35 U.S.C. § 271(g), alleging that JAL's examination of electronic passports when processing and/or boarding passengers at United States airports constitutes infringement.  A3-A4.  Section 271(g) provides in relevant part that "[w]hoever without authority * * * uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer * * *."

JAL moved to dismiss the suit on multiple grounds, including that IRIS's claim was barred by 28 U.S.C. § 1498(a).  That provision states in relevant part that whenever a patented invention is "used * * * for the United States without * * * lawful right to use[,] * * * the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable *and entire* compensation for such use * * *."  *Ibid.* (emphasis added).  It further provides that "the use * * * of an invention described in and covered by a patent of the United States by* * *any person, firm, or corporation *for the Government and with the authorization or consent of the Government,* shall be construed as use * * * for the United States.  *Ibid.* (emphasis added).

---

[1] The prefix "A" denotes a citation to the addendum to appellant's opening brief.

2

As relevant here, JAL also asserted that any cause of action IRIS had under Section 271(g) for JAL's examination of passports conflicted with the Enhanced Border Security Act, Pub. L. No. 107-173, sec. 402(a) (codified at 8 U.S.C. § 1221, *et seq.*). The Enhanced Border Security Act requires airlines to provide United States border officials with information about persons arriving into and departing from the United States, including information about the travel documents of such persons. 8 U.S.C. § 1221(a)-(d). The Act's implementing regulations make each airline "responsible for comparing the travel document presented by the passenger with the travel document information [the airline] is transmitting* * *to ensure that the information is correct, the document appears to be valid for travel purposes, and the passenger is the person to whom the travel document was issued." 19 C.F.R. § 122.75a(d).

The United States filed a statement of interest at the district court's invitation. The United States argued that Section 1498(a) immunized JAL against IRIS's Section 271(g) infringement claim, and thus no conflict existed between Section 271(g) and federal requirements that JAL inspect passenger passports. The United States also argued that, even if Section 1498(a) did not immunize JAL, Section 271(g) could not be said to conflict with JAL's federal obligations to inspect passports until and unless IRIS's patent was found valid and enforceable, and JAL was found to have infringed the patent.

3

The district court granted JAL's motion to dismiss.  *See* A1-A49.  Although the district court recognized that JAL's passport inspections were conducted "for" the United States and "with the authorization or consent" of the United States, the court concluded that Section 1498(a) did not cover acts constituting infringement under Section 271(g), and hence that JAL could not assert immunity under Section 1498(a) as a defense to IRIS's infringement claim.  A12.  However, the court held that JAL's federal obligation to inspect passenger passports conflicted with, and trumped, any patent protections conferred on IRIS by Section 271(g).  A7-A10.

IRIS appealed.  Shortly thereafter, JAL filed for reorganization under Chapter 11 of the Bankruptcy Code, and this appeal was automatically stayed from December 2009 through December 2013, when JAL was released from bankruptcy.

## SUMMARY OF ARGUMENT

1.  IRIS may not sue Japan Airlines under 35 U.S.C. § 271(g) for complying with federal requirements to inspect passenger passports.  Congress has provided that 28 U.S.C. § 1498(a) is the exclusive remedy for patent infringement whenever a patented invention is used for the government within the meaning of that statute, and IRIS's allegations meet the conditions for Section 1498(a)'s applicability.

The district court's ruling that JAL could not assert immunity under Section 1498(a) rested on then-extant Federal Circuit precedent stating that Section 1498(a) authorizes suits against the United States only for acts constituting infringement under

35 U.S.C. § 271(a). *See Zoltek Corp. v. United States*, 442 F.3d 1345 (Fed. Cir. 2006) (per curiam). While this appeal was pending, the Federal Circuit issued an *en banc* decision in *Zoltek* holding that Section 1498(a) encompasses acts constituting infringement under Section 271(g). *See* 672 F.3d 1309 (Fed. Cir. 2012) (en banc). There is thus no question that Section 1498(a), as construed by this Court, covers the infringement alleged here.

There is also no serious question that JAL's allegedly infringing conduct qualifies as action for the United States within the meaning of Section 1498(a). Federal regulations promoting the government's border security interests require airlines to examine the passports of persons departing from and arriving into the United States. *See* 19 C.F.R. § 122.75a(d). As the district court recognized, JAL's passport inspections benefit the United States, and are conducted with the federal government's authorization and consent.

2. Because 28 U.S.C. § 1498(a) immunizes JAL against infringement liability while permitting IRIS to seek relief against the United States for JAL's conduct, this suit does not present any clash between JAL's federal obligations and IRIS's patent rights. The district court therefore erred in perceiving a conflict between Section 271(g) and the Enhanced Border Security Act, and in concluding that a judicial exception to Section 271(g) was warranted to resolve that conflict.

The district court's conflict-of-laws analysis was also misconceived for at least several additional reasons.  First, the court's reasoning is incompatible with Congress's provision that 28 U.S.C. § 1498(a) is the exclusive remedy for reconciling conflicts between the United States' need to use a patented invention and the private patent rights of individuals.  Second, the court's analysis rests on the erroneous assumption that the Enhanced Border Security Act's text sets forth specifications that clash with the patent rights extended by Section 271(g).  Finally, the district court was misplaced in its reliance on *SmithKline Beecham Consumer Healthcare v. Watson Pharmaceuticals,* 211 F.3d 21 (2d Cir. 2000).  The district court overlooked a number of factors distinguishing this case from the circumstances in *SmithKline,* chief among which is that construing the Enhanced Border Security Act to supersede Section 271(g) does not "preserve[] the principal purposes of each [statute]," 211 F.3d at 28, but instead burdens the policies of federal patent law in ways that were not present in *SmithKline.*

## ARGUMENT

### I. 28 U.S.C. § 1498(a) IMMUNIZES JAPAN AIRLINES FROM INFRINGEMENT LIABILITY FOR COMPLYING WITH FEDERAL REQUIREMENTS TO INSPECT PASSENGER PASSPORTS.

IRIS has sued JAL for patent infringement under 35 U.S.C. § 271(g) for carrying out passport inspections required by the federal government.  The district court correctly held that IRIS's suit cannot proceed.  However, the court rested that

holding on the wrong ground. The reason why IRIS may not sue JAL is that IRIS's infringement claim comes within the scope of 28 U.S.C. § 1498(a), which provides the exclusive remedy for patent infringement when a patented invention is used for the government within the meaning of Section 1498(a). The district court assumed that Section 1498(a) does not extend to claims of infringement under 35 U.S.C. § 271(g), but this Court's *en banc* decision in *Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012), which was issued during the pendency of this appeal, repudiates that view.

## A. Section 1498(a) Provides the Exclusive Remedy When a Patented Invention Is Used for the Government and with the Government's Authorization or Consent.

Congress enacted the statutory provision now codified, as amended, at 28 U.S.C. § 1498(a), to resolve conflicts between the public needs and requirements of the United States and the private rights of patent holders. In 1910, Congress enacted legislation permitting patent owners to recover compensation from the United States for unauthorized use of a patented invention by the federal government. Act of June 25, 1910, Pub. L. No. 61-305, 36 Stat. 851. In its original form, the 1910 Act provided that "whenever a[] [patented] invention * * * shall hereafter be used by the United States without license * * * or lawful right to use the same, [the] owner may recover reasonable compensation for such use by suit in the Court of Claims." *Ibid.*

In 1918, Congress amended the 1910 Act to address a Supreme Court holding that the Act did not cover acts of alleged infringement by a private party performing a government contract. The Court's decision threatened to disrupt the federal government's operations by exposing contractors acting for the United States to "injunction and other interference through litigation by the patentee." *Richmond Screw Anchor Co. v. United States,* 275 U.S. 331, 342 (1928) (quotation marks from original omitted). To avoid that result, Congress amended the 1910 Act to provide an exclusive remedy against the United States whenever a patented invention is "used or manufactured by *or for* the United States" without license or lawful right to use. Act of July 1, 1918, Pub. L. No. 65-182, 40 Stat. 704, 705 (emphasis added). Congress subsequently added a further amendment in 1942, to clarify that the 1910 Act covered acts of alleged infringement "by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government." Act of October 31, 1942, Pub. L. No. 77-768, 56 Stat. 1013, 1014.

The 1910 Act is now codified, as amended, at 28 U.S.C. § 1498(a). As relevant here, Section 1498(a) provides that whenever a patented invention is "used * * * for the United States without * * * lawful right to use[,] * * * the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable *and entire* compensation for such use * * *." *Ibid.* (emphasis added). It further provides that "the use * * * of an invention described in

8

and covered by a patent of the United States by* * *any person, firm, or corporation *for the Government and with the authorization or consent of the Government,* shall be construed as use * * * for the United States. *Ibid.* (emphasis added).

### B. Section 1498(a) Encompasses Claims of Patent Infringement under Section 271(g).

IRIS has sued JAL under 35 U.S.C. § 271(g) for unauthorized use of the product of a patented process, alleging that JAL's passport inspections are an infringing use of electronic passports allegedly made through IRIS's patented method. Although the district court recognized that JAL's accused actions were "for" the United States and with the federal government's authorization and consent, the court concluded that Section 1498(a) does not cover infringement under Section 271(g). *See* A12.[2]

The district court's view regarding the relationship between Section 1498(a) and Section 271(g) has been overtaken by developments in this Court. Acting in 2010, the district court relied on this Court's then-prevailing decision in *Zoltek Corp. v. United*

---

[2] The district court also incorrectly concluded Section 1498(a) cannot apply with respect to JAL's inspection of foreign passports because "there is no claim that as to foreign passports the United States engaged in any infringing activity." *See* A12 n.2. Because federal regulations require JAL to inspect all passenger passports regardless of passenger nationality, and because JAL must use the same inspection procedure when examining United States and foreign passports, Section 1498(a)'s applicability does not turn on whether the passports being inspected were issued by the United States.

*States*, 442 F.3d 1345 (Fed. Cir. 2006) (*Zoltek III*) (per curiam), which stated that Section 1498(a) authorizes suits against the United States only for acts constituting infringement under 35 U.S.C. § 271(a).  *See* A13.  But while this appeal was pending, this Court issued an *en banc* decision in *Zoltek* that significantly revised the Court's earlier construction of Section 1498(a).  *See Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012) (*en banc*) (*Zoltek V*).

In *Zoltek V*, the *en banc* Court held squarely that Section 1498(a) covers claims of infringement based on the use of the product of a patented process by and for the United States.  672 F.3d at 1326-27.  Section 1498(a), as noted, provides the exclusive remedy for patent infringement whenever a patented invention "is used * * * for the United States without * * * lawful right to use."  The *en banc* court held that, "for the purposes of section 1498, the use or importation 'within the United States [of] a product which is made by a process patented in the United States' constitutes use of the invention without lawful right because the products embody the invention itself." 672 F.3d at 1326 (quoting 35 U.S.C. § 271(g)).

Thus, as construed by this Court in *Zoltek V*, Section 1498(a) covers alleged infringement under Section 271(g).  672 F.3d at 1327.  This Court has held that Section 1498(a) subjects the government to suit for such use and correspondingly provides immunity "from individual liability for the alleged infringement" to the

private entity acting for and with the authorization of the United States. *Ibid.*

Section 1498(a) therefore requires dismissal of IRIS's infringement claim against JAL.[3]

### C. JAL's Passport Inspections Are "For" the United States and with Its "Authorization and Consent" Within the Meaning of Section 1498(a).

Federal law requires airlines to provide the government with information about persons arriving into and departing from the United States. 8 U.S.C. § 1221(a)-(c). That information includes details about the passports and visas of such persons and "such other information the Attorney General, in consultation with the Secretary of State, and the Secretary of Treasury determines as being necessary for the identification of the persons transported and for the enforcement of the immigration laws and to protect safety and national security." *Id.* § 1221(c)(10).

In conjunction with this statutory provision, the federal government has issued regulations that require airlines to physically inspect the travel documents of their passengers. The regulations make each carrier "responsible for comparing the travel document presented by the passenger with the travel document information [the carrier] is transmitting * * * to ensure that the information is correct, the document

---

[3] The United States participated in *Zoltek V* as an *amicus curiae* but was not a party to the appeal. The government's submission in this case should not be understood to reflect agreement with the position adopted by the Court in *Zoltek V* regarding the scope of the government's liability under Section 1498(a). However, *Zoltek V* is the law of this Circuit, and as such, it governs this case and other cases until and unless it is reconsidered by this Court or by the Supreme Court in the future.

appears to be valid for travel purposes, and the passenger is the person to whom the travel document was issued." 19 C.F.R. § 122.75a(d).

As the district court correctly recognized (A13), JAL's examination of passenger passports in these circumstances qualifies as action "for the Government and with the authorization or consent of the Government" for purposes of Section 1498(a). This Court has interpreted the term "for the Government" in Section 1498(a) to mean "for the benefit of the government." *Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis,* 583 F.3d 1371, 1378 (Fed. Cir. 2009). This Court has also concluded that the government need not be "the sole beneficiary * * * in order to be a beneficiary for the purposes of § 1498(a)" as long as the benefits gained by the government are more than "incidental." *Ibid.* In considering whether the allegedly infringing conduct of a non-governmental entity was "for the government," the Federal Circuit has found sufficient governmental benefit where the conduct served "the national interest in averting fraud in Treasury checks," *ibid.*, and where the "only purpose" of the conduct "was to comply with the Government's bidding requirements," *TVI Energy Corp v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986).

"Authorization or consent by the Government can be expressed" in a variety of forms, and in certain circumstances, "[g]overnment authorization can be implied." *TVI Energy Corp,* 806 F.2d at 1060. In *TVI,* this Court found that "Government authorization was expressed by the specific requirement that [a supplier] demonstrate,

under the guidelines of the [Government's] bidding procedure, the allegedly infringing [items]." *Ibid.* This Court further observed that "[t]he mere fact that the Government specifications * * * did not absolutely require [the supplier] to infringe TVI's patent * * * does not extinguish the Government's consent." *Ibid.* As this Court explained: "To limit the scope of § 1498 only to instances where the Government requires by specification that a supplier infringe another's patent would defeat the Congressional intent to allow the Government to procure whatever it wished regardless of possible patent infringement." *Ibid.*

Here, as noted above, JAL must examine passenger passports to comply with federal requirements, which in turn serve, at a minimum, the border security interests of the United States. Federal regulations specifically require an airline to "compare[] the travel document presented by the passenger with the travel document information it is transmitting * * *." 19 C.F.R. § 122.75a(d). While there may be some ability for the airline to determine the best way to make the needed comparison, it may not decline to examine the passport. This is, therefore, a fundamentally different case from situations where the United States imposes a general regulatory requirement but leaves the choice of design for a required item to the discretion of the regulated party. *Cf.* Appellant Br. 10-11 (noting that "[f]ederal law frequently requires industries to make use of patented features, without granting compulsory licenses or invalidating the patents, thus requiring payment for the use of the intellectual property" and listing

13

several examples). Accordingly, JAL's conduct qualifies as action taken "for the Government and with the authorization or consent of the Government" for purposes of 28 U.S.C. § 1498(a).

## II. SECTION 271(g) DOES NOT CONFLICT WITH THE ENHANCED BORDER SECURITY ACT.

The district court based its dismissal of IRIS's Section 271(g) claim on a different theory. The district court concluded that Section 271(g) conflicts with the Enhanced Border Security Act and that, under the Second Circuit's reasoning in *SmithKline Beecham Consumer Healthcare v. Watson Pharmaceuticals,* 211 F.3d 21 (2d Cir. 2000), the latter act implicitly supersedes the former provision to the extent of the conflict. That conclusion is incorrect.

As noted above, Congress enacted Section 1498(a) to resolve potential conflicts between the public needs and requirements of the United States, and the private patent rights of individuals. Section 1498(a) makes it possible for JAL to carry out its obligations under federal law regarding the inspection of passports without subjecting itself to liability under Section 271(g), while permitting IRIS to seek relief against the United States for JAL's conduct.[4] Given the role of Section 1498(a) in reconciling

---

[4] The district court concluded (A7-A8) that JAL's inspection of passports constitutes "use" within the meaning of Section 271(g). Because Section 1498(a) immunizes JAL from suit, this brief does not address that issue. However, the government does not concede that JAL's inspection of passports is such a "use."

JAL's inspection obligations and IRIS's patent rights, it is unnecessary — and inappropriate — for an exception to federal patent law to be judicially created.

In any event, the district court's conflict analysis was misconceived. The district court determined that JAL was "required to inspect passenger passports under the Enhanced Border Security Act" and further determined that "compliance with this law requires using a product that was made by a patented process." A8. On that basis, the court concluded that "a conflict exists between the Enhanced Border Security Act and the patent laws." *Ibid.*

As explained above, the Enhanced Border Security Act requires airlines "to provide * * * [specified] manifest information about each passenger, crew member, and other occupant," 8 U.S.C. § 1221(a), and 19 C.F.R. § 122.75a(d) implements this requirement by making each carrier "responsible for comparing the travel document presented by the passenger with the travel document information [the carrier] is transmitting * * * to ensure that the information is correct, the document appears to be valid for travel purposes, and the passenger is the person to whom the travel document was issued." Because the particular obligation to "compare the travel document" is contained in the regulation rather than the statute, this is not a case in which two statutes can be said to conflict, and *SmithKline* is simply inapposite for that reason. *Cf. SmithKline,* 211 F.3d at 27-28 (identifying a "conflict between two *statutes*" and resolving this conflict by "applying the familiar canon that, *where two laws are in*

15

*conflict,* courts should adopt the interpretation that preserves the principal purposes of each" (emphasis added)).

In *SmithKline,* the defendant, a manufacturer of generic drugs, wished to obtain FDA approval for a generic form of a SmithKline product. *See* 211 F.3d at 23. The Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act required the defendant to submit proposed labeling for the generic product, and further required that this labeling be the "same" as the labeling for SmithKline's product. *Ibid.*; *see also* 21 U.S.C. § 355(j)(2)(A)(v). SmithKline, which had copyrighted the labels on its product, sued the defendant for copyright infringement. *Id.* at 23-24. The Second Circuit, determining that *SmithKline* presented a situation of "conflict between two statutes," endeavored to resolve the conflict by "applying the familiar canon that, where two laws are in conflict, courts should adopt the interpretation that preserves the principal purposes of each." *Id.* at 27-28. Noting that "[t]he purposes of the Hatch-Waxman Amendments would be severely undermined" by the acceptance of SmithKline's claim, but that "[n]o such severe undermining of the purpose of the copyright laws would follow from the rejection of SmithKline's claim," *id.* at 28, the Court directed that SmithKline's claim be dismissed. As the Court explained: "Congress would have provided explicitly" for the later-enacted Hatch-Waxman Amendments to "trump the copyright laws had it foreseen the statutory conflict exposed by the present action." *Id.* at 29.

16

Moreover, even if JAL's inspection obligation derived from the Enhanced Border Security Act rather than from a federal regulation, the district court's conflict analysis under *SmithKline* would still be misconceived. In *SmithKline*, there was no serious question that a conflict of laws existed because the Hatch-Waxman Amendments required generic drug manufacturers to use the "same" labels approved for the pioneer drug. 211 F.3d at 23. Here, there can be no conflict between Section 271(g) and the Enhanced Border Security Act *unless* JAL's inspection of passports qualifies as infringing "use" of a "product" within the meaning of Section 271(g), *and* IRIS's patent is valid and enforceable. And, in that event, JAL can comply with both laws if it seeks and obtains a license from IRIS that authorizes JAL to inspect passports manufactured with IRIS's process. In *SmithKline,* in contrast, it would have been impossible as a practical matter for the defendant to comply simultaneously with the Hatch-Waxman Act and the Copyright Act, because SmithKline had no commercial interest in licensing the use of its copyrighted labeling by a would-be competitor.

A further feature distinguishing this case from *SmithKline* is that the interests protected by the Patent Act differ in significant respects from those protected by the Copyright Act, and construing the Enhanced Border Security Act to supersede Section 271(g) would burden the policies of federal patent law in ways that were not present in *SmithKline*. Copyright protects expression of ideas or information, as

17

opposed to the ideas themselves. The Second Circuit in *SmithKline* noted that commercial labeling was entitled to copyright protection but determined that this protection applies to a lesser extent where the labeling was not created for expressive purposes. *See id.* at 29 n.5. The Second Circuit thus concluded that SmithKline's interest in copyright protection could be balanced against the harm it would suffer if an exception were permitted, and further concluded that "[t]he pertinent purpose of the copyright laws — to encourage the production of creative works * * * — is not seriously implicated by allowing the [Hatch-Waxman Amendments'] 'same' labeling requirement to trump a copyright." *Id.* at 29 (internal citations omitted).

The same reasoning does not apply to patent rights, which protect ideas, not their expression. The strength of a patentee's right to exclusivity does not vary in degree depending on the nature of the patented invention. Nor are courts generally free to weigh the value of enforcing patent rights against the harm that would be caused by not enforcing them. *SmithKline* therefore provides no warrant for the district court's conflict ruling.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed on the ground that JAL is immune from suit under 28 U.S.C. § 1498(a).

Respectfully submitted,

STUART F. DELERY
*Assistant Attorney General*

 /s/ Anisha S. Dasgupta
SCOTT R. McINTOSH
(202) 514-4052
ANISHA S. DASGUPTA
(202) 514-5428
*Attorneys, Appellate Staff*
*Civil Division, Room 7533*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530*

February 14, 2014

19

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a) OF THE FEDERAL RULES OF APPELLATE PROCEDURE

I hereby certify that this brief complies with the type-volume limitation, typeface requirements, and type style requirements of Federal Rule of Appellate Procedure 32(a). According to the word count provided in Microsoft Word 2010, the foregoing brief contains 4,357 words. The text of the brief is composed in 14-point Garamond typeface.

        /s/ Anisha Dasgupta
        ANISHA S. DASGUPTA
        Attorney for the United States as amicus curiae

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2014, I filed and served the foregoing

Brief for Amicus Curiae the United States and served it on all registered counsel by

causing a copy to be electronically filed via the appellate CM/ECF system.


   /s/ Anisha Dasgupta   
ANISHA S. DASGUPTA
Attorney for the United States as amicus curiae