2010-1051

_____

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

IRIS CORPORATION,

         *Plaintiff-Appellant,*

v.

JAPAN AIRLINES CORPORATION,

         *Defendant,*

and

JAPAN AIRLINES INTERNATIONAL COMPANY, LTD.,

         *Defendant-Appellee.*

_____

Appeal from the United States District Court for the Eastern District of New York in case no. 06–CV–6336, Judge Carol Bagley Amon

_____

**BRIEF OF *AMICUS CURIAE* AIRLINES FOR AMERICA SUPPORTING APPELLEE AND AFFIRMANCE OF THE JUDGMENT**

_____

         Dan L. Bagatell
         PERKINS COIE LLP
         2901 N. Central Avenue, Suite 2000
         Phoenix, Arizona 85012

         Phone: (602) 351–8250
         E-mail: DBagatell@perkinscoie.com

         Counsel for *Amicus Curiae* Airlines for America

April 2, 2014

# CERTIFICATE OF INTEREST

Counsel for *amicus curiae* Airlines for America certifies the following:

The full name of every party or *amicus curiae* represented by me is:

Air Transport Association of America, Inc. d/b/a Airlines for America ("A4A")

The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

same[*]

All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or *amicus curiae* represented by me are:

n/a

The names of all law firms and the partners or associates that appeared for the party or *amicus curiae* now represented by me in the trial court or are expected to appear in this Court are listed below.

PERKINS COIE LLP

Dan L. Bagatell

Dated: April 2, 2014      /s/Dan L. Bagatell
                                      Dan L. Bagatell

---

[*] Perkins Coie does not represent the individual members of A4A. Nevertheless, to assist the Court assessing conflicts, we identify the following members:

| | | |
|---|---|---|
| Alaska Airlines, Inc. | American Airlines, Inc. | Atlas Air, Inc. |
| Delta Air Lines, Inc. | Federal Express Corp. | Hawaiian Airlines |
| JetBlue Airways Corp. | Southwest Airlines Co. | United Continental Holdings, Inc. |
| UPS Airlines | | |

Air Canada is an associate member.

# TABLE OF CONTENTS

Certificate of Interest ................................................................................. i

Table of Authorities ................................................................................ iii

Introduction ...............................................................................................1

Statement of Interest .................................................................................3

Argument ...................................................................................................4

      A.    This case is important because it is a test case that will affect the entire airline industry and millions of travelers per year ..............4

      B.    The United States government requires airlines to check the passports of all international air passengers, and airlines must accept those passports in the form that governments decide to issue them ...............................................................................................5

      C.    Because federal law requires airlines to check passenger passports, airlines cannot be held liable for performing those checks—regardless of whether the passports were made using IRIS's patented method ...................................................................7

Conclusion ...............................................................................................10

Certificate of Compliance .......................................................................11

Proof of Service ......................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                               **Pages**

*Advanced Software Design Corp. v. Fed. Reserve Bank of St. Louis*,
   583 F.3d 1371 (Fed. Cir. 2009) ...................................................................9

*RadLAX Gateway Hotel, LLC. v. Amalgamated Bank*,
   132 S. Ct. 2065 (2012) ...............................................................................10

*TVI Energy Corp. v. Blane*,
   806 F.2d 1057 (Fed. Cir. 1986) ...................................................................9

*Zoltek Corp. v. United States*,
   672 F.3d 1309 (Fed. Cir. 2012) (en banc) ..................................................8


**Statutes and Regulations**

8 U.S.C. § 1221 ................................................................................................5

8 U.S.C. § 1221(b) ...........................................................................................5

8 U.S.C. § 1221(c)(5) .......................................................................................5

8 U.S.C. § 1221(c)(10) .....................................................................................5

8 U.S.C. § 1221(g) ...........................................................................................6

28 U.S.C. § 1498(a) ................................................................................2, 8, 9

35 U.S.C. § 271(a) ...........................................................................................8

35 U.S.C. § 271(g) .......................................................................................7, 8

19 C.F.R. § 122.75a(b)(3) ................................................................................6

19 C.F.R. § 122.75a(d) ....................................................................................6

INTRODUCTION

With the consent of both parties, Airlines for America ("A4A") submits this *amicus* brief to help the Court to understand both the importance of this case to the airline industry as a whole and the reality that airlines simply follow government orders when checking passports.[1]

Although this particular lawsuit involves IRIS's patent infringement claim against one airline that flies just a few international routes from the United States, the issue is not so limited.  By command of the United States government, all airlines that fly international routes must check passengers' passports and confirm certain information.  Moreover, all airlines must take and check passengers' passports as the passengers present them—with or without electronic chips inside.  For that reason, IRIS has treated this case as a test case, and if this Court allows IRIS to proceed against JAL, IRIS intends to proceed on the same theory against the other airlines that fly abroad from the United States.  As a practical matter, this case thus affects *all* airlines that fly international routes—and the more than 90 million travelers who fly internationally from the United States each year.

---

[1] No party or counsel for a party has authored this brief in whole or in part, and no one other than Airlines for America, its members, and its counsel has contributed any money intended to fund the preparation or submission of this brief.

As discussed below, the judgment dismissing IRIS's lawsuit for failure to state a claim was correct and should be affirmed. As JAL has explained, this Court can affirm in a variety of ways, all of them related to the fact that airlines merely inspect passengers' passports by government command. To begin with, A4A submits that even if government-issued passports are considered "products," the "users" of those passports would at most be the travelers that rely on them to travel abroad and the governments that rely on them to regulate that travel—not the airlines that simply look at them to confirm bibliographic information provided by passengers as required by federal law. In any event, even if such checks constitute "use" of a "product," that "use" is mandated by the United States government. Indeed, that is so regardless of whether the passports are issued by the United States or a foreign country. As a result, any possible infringement would be for the benefit of the United States government, and under 28 U.S.C. § 1498(a) IRIS's sole remedy would be a lawsuit against the federal government in the Court of Federal Claims. If that were not the case, there would be real conflict between the statutes and regulations requiring passport checks to ensure national security and passenger safety and IRIS's desire for compensation under the Patent Act. And the district court correctly recognized that in that scenario, the more specific statute directing airlines to review passports must prevail over the more general statute imposing liability for patent infringement.

## STATEMENT OF INTEREST

A4A is the trade organization for the leading United States-based airlines. Founded in 1936, A4A has played an important role in all major government decisions regarding civil aviation since its founding, including the creation of the Civil Aeronautics Board, the development of the air traffic control system, airline deregulation and, more recently, dealing with security concerns in the aftermath of the September 11 attacks. Among other things, A4A serves both its members' interests and the public interest by promoting passenger safety, service, and efficiency; advocating fair airline taxation and regulation; and developing and coordinating actions that are environmentally beneficial, economically reasonable and technologically feasible. A4A has particularly worked with U.S. Immigration and Customs Enforcement to improve its efficiency of processing international passengers. Today, A4A members and their affiliates transport more than 90% of all United States domestic airline passenger and cargo traffic and more than 50% of international traffic to and from the United States. All of its passenger airline members fly international passenger routes.

A4A has a strong interest in this case because IRIS seeks to hold all airlines that fly international passenger routes liable for patent infringement merely for checking passports as required by federal law. That result would be both unfair and contrary to law. As discussed below, A4A submits that if IRIS has any valid

– 3 –

claim for infringement, it is against the federal government, which designs and issues United States passports and which mandates that airlines check both American and foreign passports as part of its effort to promote passenger safety and national security.

**ARGUMENT**

**A.     This case is important because it is a test case that will affect the entire airline industry and millions of travelers per year**

Although IRIS chose to sue JAL in this case, IRIS has candidly admitted that it considers this case a test case. During a status conference early on with Magistrate Judge Matsumoto, IRIS's counsel confirmed that if it prevailed here, it would bring similar lawsuits against other airlines flying international routes from the United States. As a result, the impact of this case is not limited to a single foreign airline that flies only a few routes from this country.

To the contrary, the stakes are quite high. Dozens of airlines fly international passenger routes from the United States. Collectively, those airlines fly thousands of international flights from this country each week. Indeed, according to the National Travel and Tourism Office of the Department of Commerce, over 91.5 million passengers flew from the U.S. to foreign destinations in 2013, over 40% of whom were American citizens. And as discussed next, federal law mandates that the airlines review the passport of every passenger that presents one.

## B. The United States government requires airlines to check the passports of all international air passengers, and airlines must accept those passports in the form that governments decide to issue them

Airlines do not design or manufacture passports. Instead, national governments design and distribute them and, along the way, decide whether to include electronic chips and other security features. Airlines also do not select passengers according to whether or not their passports contain electronic chips. Airlines simply review whatever passports passengers already hold by specific mandate of the United States government.

In particular, 8 U.S.C. § 1221 requires airplanes and other vessels to maintain "[l]ists of alien and citizen passengers arriving and departing." Subsection (b) requires any aircraft taking on passengers in the United States destined for anywhere outside the United States to provide a manifest with information about each passenger and crew member to be transported. 8 U.S.C. § 1221(b). That manifest must include, among other things, each passenger's passport number and country of issuance, 8 U.S.C. § 1221(c)(5), and "such other information the Attorney General, in consultation with the Secretary of State, and the Secretary of Treasury determines as being necessary for the identification of the persons transported and for the enforcement of the immigration laws and to protect safety and national security," 8 U.S.C. § 1221(c)(10). An airline that fails to comply is subject to

– 5 –

substantial penalties—$1,000 for each person for which full and accurate information was not supplied. 8 U.S.C. § 1221(g).

Regulations by the Attorney General reiterate that the manifest must include the numbers, countries of issuance, and expiration dates of all passenger passports. 19 C.F.R. § 122.75a(b)(3)(vi)-(ix). The regulations also specifically require each airline to check each passenger's passport to confirm the accuracy of the information that the airline must supply to the federal government:

> The carrier collecting the information described in paragraph (b)(3) of this section is responsible for *comparing the travel document presented by the passenger with the travel document information it is transmitting* to [Customs and Border Protection] in accordance with this section in order *to ensure that the information is correct, the document appears to be valid for travel purposes, and the passenger is the person to whom the travel document was issued*.

19 C.F.R. § 122.75a(d) (emphasis added).

In short, federal law requires airlines flying international routes to examine each passport that a passenger tenders—like it or not, and regardless of how that passport was manufactured. And the express purpose of doing so is to help the United States government to protect passenger safety and national security.

– 6 –

**C. Because federal law requires airlines to check passenger passports, airlines cannot be held liable for performing those checks—regardless of whether the passports were made using IRIS's patented method**

The district court, the federal government, and JAL have presented a variety of legal reasons why IRIS's complaint must be dismissed for failure to state a claim. At bottom, however, all of them are based on the fact that airlines do not design or make passports. Instead, airlines simply compare passports to information provided by passengers because the federal government has commanded them to do so for purposes of national security and passenger safety. One way or another, IRIS's patent infringement claim against JAL—and the similar claims that IRIS plans to bring against A4A's members—must fail.

IRIS's legal theory is that passports made with electronic chips constitute "products" made abroad by its patented process and that airlines infringe its patent under 35 U.S.C. § 271(g) because the airlines "use" the passports when checking the accuracy of passenger manifest information. But passports are not commercial articles; they are travel documents and identifications issued by and belonging to national governments. As JAL explains, they are not the kind of "products" that Section 271(g) contemplates. Moreover, even if passports could be deemed "products," airlines do not "use" them in any way contemplated by the Patent Act. "Using" something means employing it by taking advantage of it. Perhaps passengers "use" their government-issued passports to identify themselves, to confirm

their citizenship and their right to travel internationally, and so forth. And perhaps governments "use" the passports they issue to regulate international travel. But airlines obtain no such advantage; they are simply forced to send passport information to the United States government (and, typically, foreign governments as well) for the advantage of passengers and national governments.

In any event, even if airlines could be deemed to "use" the passports they check, such use is undeniably at the command of and for the benefit of the U.S. government, requiring IRIS to bring any claim against the federal government in the Court of Federal Claims. Under 28 U.S.C. § 1498(a), "[w]henever an invention described in and covered by a patent of the United States is used … for the United States without license of the owner," the owner's sole remedy is "by action against the United States in the United States Court of Federal Claims." Use by anyone "for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States." *Id.* In this case, the district court thought Section 1498(a) did not apply because IRIS sued under 35 U.S.C. § 271(g), but this Court has since made clear that Section 1498(a) covers claims under Section 271(g) as well as claims under Section 271(a). *Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc).

Notably, IRIS conceded below that JAL's supposed "use" was mandated by federal law because airlines are legally required to examine passengers' passports.

[A210 (Tr. of Hrg. on Mot. to Dismiss 16:17-20) ("No doubt it's mandated.")] Moreover, the federal government agrees that any use by JAL has been "for the United States" because airlines are required to check passports for the benefit of the federal government's efforts to ensure passenger safety and national security. *See* U.S. Amicus Br. 11-14 (citing *Advanced Software Design Corp. v. Fed. Reserve Bank of St. Louis*, 583 F.3d 1371 (Fed. Cir. 2009), and *TVI Energy Corp. v. Blane*, 806 F.2d 1057 (Fed. Cir. 1986)). Contrary to the district court's assumption [Add. 12 n.2], that is true regardless of which country issued a given passport because the statute and its implementing regulation require checking both foreign and domestic passports. Thus, even if JAL could infringe by checking passports at the federal government's insistence, IRIS's only recourse is a Court of Federal Claims case against the federal government. IRIS has no district court remedy against JAL—or any other airline.

Finally, even if IRIS could somehow avoid Section 1498(a), the district court was correct in recognizing that there would be a square conflict between the Patent Act and the Enhanced Border Security Act and that IRIS's patent infringement claim must yield to the national interest in protecting passenger safety and national security. IRIS purports to reconcile the two statutes by saying (at 6) that "JAL can comply with the Enhanced Border Security Act by examining passenger passports, and, at the same time, comply with the Patent Laws of the United States

– 9 –

by paying IRIS for use of products manufactured according to the … patented process." But that misses the point, which is that the Enhanced Border Security Act makes it legal—indeed mandatory—for airlines to check all passports, no matter how they were made. As a matter of law, the specific governmental authorization and command to check all passports governs over the more general patent statute, even if the Patent Act would otherwise prohibit checking certain passports without a license from IRIS. *See*, *e.g.*, *RadLAX Gateway Hotel, LLC. v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) ("The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one").

## CONCLUSION

The dismissal of IRIS's patent infringement claim should be affirmed.

Respectfully submitted,

PERKINS COIE LLP

by  /s/Dan L. Bagatell
Dan L. Bagatell

Counsel for *Amicus Curiae* Airlines for America

# CERTIFICATE OF COMPLIANCE

1.	This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(d).  The brief contains 2,269 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.	This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft® Word and 14-point Times New Roman type.

Dated:  April 2, 2014.	          /s/Dan L. Bagatell          
	Dan L. Bagatell
	Attorney for Airlines for America

## PROOF OF SERVICE

In accordance with Federal Rule of Appellate Procedure 25 and Federal Circuit Rule 25, I certify that I caused this brief to be served via the Federal Circuit's CM/ECF system on counsel of record for all parties.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: April 2, 2014, at Phoenix, Arizona.

                                                  /s/Dan L. Bagatell
                                                  Dan L. Bagatell